**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael J. CORBITT, Defendant–Appellant.**

No. 92–3835.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1993.

Decided Dec. 28, 1993.

---

Thomas Scorza, Asst. U.S. Atty., Crim. Div. (argued), Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

Candace J. Fabri, Sachnoff & Weaver (argued), John H. Ehrlich, Levin & Funkhouser, Chicago, IL, for Michael J. Corbitt.

Before FLAUM and EASTERBROOK, Circuit Judges, and SKINNER, District Judge.*

FLAUM, Circuit Judge.

After a jury found Michael Corbitt guilty of participating in a RICO conspiracy, Corbitt was sentenced under pre-Sentencing Guidelines law to a twenty-year prison term. About two and a half years after this sentence was imposed, the government asked the district court to resentence Corbitt, arguing that his original sentence was illegal because it should have been imposed under the Guidelines. The district court granted the government's motion and resentenced Corbitt under the Guidelines, again to a twenty-year term but effectively increasing the actual prison time he must serve by a period that could range from about four to ten years. Corbitt appeals the resentencing, claiming that it was sought too late in the day. We agree.

## I.

On June 12, 1989, a jury found Michael Corbitt and two codefendants, Alan Masters and James Keating, guilty of conspiracy under the federal RICO (Racketeer Influenced and Corrupt Organization) statute, 18 U.S.C. § 1962(d). (Masters and Keating also were convicted of substantive RICO charges.) We have described the details of their crimes before, *see United States v. Masters*, 924 F.2d 1362 (7th Cir.) *cert. denied*, —— U.S. ——, 111 S.Ct. 2019, 114 L.Ed.2d 105

and —— U.S. ——, 112 S.Ct. 86, 116 L.Ed.2d 58 (1991) (hereinafter *"Masters I"*), and so abridge our factual recitation to what is necessary for the resolution of this appeal.[1] In 1981 Masters decided to have his wife, Dianne, killed, and to that end enlisted the aid of Corbitt and Keating, with whom he had already developed an informal association for other criminal purposes. Corbitt's and Keating's assistance in this matter was especially helpful because both were ranking law enforcement officials; Keating was a lieutenant in the Cook County Sheriff's Department, and Corbitt was the chief of police in the suburban Chicago community of Willow Springs.

Dianne Masters disappeared on March 19, 1982, and her body, beaten and shot, was found nine months later in the trunk of her car which had been driven into a canal. Corbitt likely was involved in the disposal of Dianne Masters' body and certainly was involved in a plan to hide her murder. For several years, the murder investigation led nowhere, largely because of the conspirators' efforts. When the case broke and the perpetrators finally were brought to justice, the jury found, among other things, that Corbitt, Masters and Keating conspired to conduct a racketeering enterprise in order to conceal their actions relating to Dianne Masters' murder. All three defendants were sentenced under pre-Guidelines law on August 28, 1989. Corbitt received the statutory maximum sentence of twenty years but would have been eligible for parole after serving as little as a third of that period.

All three defendants appealed their convictions, and Masters and Keating challenged their sentences, arguing (improvidently for their cause, as accurate calculation would have shown) that they should have been sentenced under the rubric of the Sentencing Guidelines. Neither the government nor Corbitt appealed his sentence. We affirmed all the convictions but vacated Masters' and Keating's sentences as they requested. Noting that our opinion in *United States v. Fa-*

---

* The Honorable Walter Jay Skinner of the District of Massachusetts is sitting by designation.

1. All who are interested in the Hollywood version of this story must wait until NBC rebroad-

casts its four-hour miniseries "Deadly Matrimony" which originally aired on November 22 and 23, 1992.

*zio,* 914 F.2d 950, 958–59 (7th Cir.1990), clarified that the Sentencing Guidelines apply to conspiracies that straddle the effective date of the Guidelines, November 1, 1987, we indicated that Masters and Keating should be sentenced under the Guidelines if in fact there was a "straddle conspiracy" in their case. Because the district court made no finding as to when the conspiracy ended,[2] we remanded the case to the district court for such a determination. On remand, the district court accepted the consensus opinion of the parties that the conspiracy remained in existence beyond November 1, 1987, and, on August 2 and September 20, 1991, the court resentenced Masters and Keating, respectively, under the Sentencing Guidelines. This court affirmed their new sentences. *See United States v. Masters,* 978 F.2d 281 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2333, 124 L.Ed.2d 245 (1993).

From the turn of events in Keating's and Masters' cases, the government realized that if it could somehow reopen Corbitt's sentencing it would likely succeed in also having him resentenced under the more severe strictures of the Guidelines. Understanding that the current version of the Federal Rule of Criminal Procedure governing correction of sentences, Rule 35, facially does not offer an opportunity to revisit Corbitt's sentence,[3] the government waited for an opening to argue as convincingly as possible that the more wide-open provisions of old Rule 35 should apply to Corbitt's case.[4] This chance came,

the government felt, when on February 4, 1992, Corbitt filed a motion for reduction of sentence under the provisions of old Rule 35(b).[5] Buoyed by what it perceived to be a concession that old Rule 35 applies to Corbitt's case for all purposes, the government filed its "Motion to Correct an Illegal Sentence" on March 20, 1992, invoking old Rule 35(a). Acting on the motion, the district court explicitly found that the RICO conspiracy extended beyond November 1, 1987, to the date of the indictment and consequently resentenced Corbitt under the Guidelines. This appeal followed.

## II.

### A.

For starters, the government and Corbitt contest which version of Rule 35 should properly apply to the government's motion. If the newer Rule applies, as Corbitt insists, its language is clear that the district court had no authority to resentence him. The case was not on remand nor did the court act within seven days of the original imposition of sentence, and, as Corbitt points out, the Rule does not provide for sentence correction outside of such circumstances. *See United States v. Daddino,* 5 F.3d 262, 265 (7th Cir. 1993) (per curiam); *Scott v. United States,* 997 F.2d 340, 341 (7th Cir.1993). The government, on the other hand, urges that the older rule, authorizing the correction of an illegal sentence "at any time," applies.[6] If it

---

**2.** The indictment charged an ongoing conspiracy—that is a conspiracy that lasted through the date of the indictment, which came after November 1, 1987—but a finding to that effect was not necessarily subsumed in the jury's verdict. The only necessary time-related finding was that the conspiracy continued until at least five years (the length of the applicable limitations period) prior to the indictment—that is, until June 15, 1983.

**3.** Rule 35(a) now allows a court to correct *on remand* a sentence that is *determined on appeal* to be either illegal, a result of incorrect application of the guidelines, or unreasonable. Rule 35(c) permits the sentencing court, within 7 days after the imposition of sentence, to correct arithmetical, technical or other clear errors in sentencing. (Rule 35(b) provides for the reduction of sentence for changed circumstances on a motion of the government within one year of sentencing.)

**4.** Old Rule 35(a) permits a sentencing court to "correct an illegal sentence at any time and ... correct a sentence imposed in an illegal manner within [120 days of sentencing, affirmance or denial of *certiorari* ]."

**5.** Also only applicable to pre-November 1, 1987, offenses, old Rule 35(b) permitted a defendant to make a motion for reduction in sentence, or the court to reduce sentence without motion, within 120 days of sentencing or adverse appellate disposition.

**6.** Old Rule 35(a) distinguishes an "illegal sentence" from a "sentence imposed in an illegal manner" and permits the district court to upset the latter only within a limited period after sentencing, which indisputably in this case had long since elapsed. While Congress has distinguished an illegal sentence from a sentence imposed as a

does, the government believes that "once the illegality of Corbitt's sentence became evident," the district court clearly acted within its authority to sentence Corbitt anew under the Guidelines.

■ We agree that old Rule 35(a) applies to the government's motion. Rule 35 was amended as part of the Comprehensive Crime Control Act of 1984—the legislation which brought us the Sentencing Guidelines—and its revised form was to be applicable to offenses committed on or after November 1, 1987, the date on which the Guidelines went into effect. *See* Act of Dec. 26, 1985, Pub.L. 99–217, § 4, 99 Stat. 1728; Act of Oct. 12, 1984, Pub.L. 98–473, Title II, § 235, 98 Stat. 2015. Old Rule 35(a) remained applicable to offenses committed before November 1, 1987.

Corbitt claims that the government cannot, out of one side of its mouth, claim that his RICO conspiracy continued beyond November 1, 1987, while, out of the other, seek resentencing under the authority of a Rule dedicated to offenses committed prior to that date. Nevertheless, despite any seeming incongruity in its positions, the government acted properly in choosing to invoke old Rule 35(a). Corbitt's original sentence was a pre-Guideline sentence in all respects. At the time of trial and sentencing, there was no finding in the record that Corbitt's crime continued beyond the effective date of the Guidelines and new Rule 35, and the district court accordingly deemed him convicted of a pre-November 1, 1987 offense. That characterization obtained through the date on which the government filed its motion. Thus, old Rule 35 was the only means available to anyone by which to seek correction of the original sentence. Corbitt properly made his motion for reduction under that Rule; likewise, the government was right to utilize the same Rule in seeking sentence correction. That the alleged defect in the sentence was in fact based on an assertion that the offense continued beyond November 1, 1987, cannot alter the fact that the government sought correction of a pre-Guidelines sentence. The only accessible avenue for relief was the one that went out from the status of the original sentence as it existed at the time of the motion. The government's desired destination—in fact, a change in that status—could not control the proper path to be taken. In short, old Rule 35 is applicable to attempts to examine pre-Guidelines sentences, even if the relief sought is resentencing under the Guidelines. *Cf. United States v. Kohl,* 972 F.2d 294, 296 (9th Cir.1992) (observing that an old Rule 35(a) motion—seeking resentencing under pre-Guidelines law—was an improper mechanism for an attack on a sentence imposed under the Guidelines).

### B.

■ While we conclude that old Rule 35(a) was the appropriate vehicle for the government's effort to reexamine the pre-Guideline sentence in this case, we hold that, even under that more forgiving rule, the district court erred in resentencing Corbitt. The court only had authority to correct an illegal sentence. Corbitt's sentence, however, was a legal sentence when imposed and remained legal until and beyond the time the government filed its motion to correct. Only a

result of incorrect application of the Guidelines, *see, e.g.,* 18 U.S.C. § 3742(e), it is not clear whether an erroneous *non* application of the Guidelines should be considered a sentence imposed in an illegal manner rather than an illegal sentence for the purposes of old Rule 35(a). This question is not easily answered because old Rule 35(a) certainly did not contemplate the Guidelines system and its fundamental restructuring of the sentencing process. Traditionally, an illegal sentence was one either outside the applicable statutory range, in violation of double jeopardy principles, or inherently contradictory or ambiguous, while a sentence imposed in an illegal manner was one within statutory parameters but imposed in some procedurally defective way.

*See Hill v. United States,* 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962); 8A Moore's Federal Practice ¶ 35.06[3][a] (2d ed. 1993). On which side of this line an erroneous nonapplication of the Guidelines falls is not at all apparent. Because it would not affect our ultimate disposition of this case, however, we will proceed without resolution of this knotty problem, and assume that an incorrect nonapplication of the Guidelines is an "illegal sentence" for old Rule 35(a) purposes. *Cf. United States v. Story,* 891 F.2d 988, 991 (2d Cir.1989) (concluding that an incorrect nonapplication of the Guidelines would be "in violation of law" for appealability purposes under 18 U.S.C. § 3742(b)).

finding that Corbitt was a participant in a conspiracy that continued through November 1, 1987, would have rendered his pre-Guidelines sentence improper, and there was no such finding in the record to which the government could point when it sought resentencing.[7] In Corbitt's case the first finding that the RICO conspiracy was in fact a straddle conspiracy was made by the district court in response to the government's motion. This came too late to qualify as a basis for sentence correction under the rule.

Now, it is true that under old Rule 35(a) the district courts had broad authority to reexamine the legality of a sentence long after it was originally imposed. Furthermore, although "the underlying objective of rule 35 [was] to 'give every convicted defendant a second round before the sentencing judge,'" Fed.R.Crim.P. 35, 1983 Amendment, advisory committee note (quoting *United States v. Ellenbogen*, 390 F.2d 537, 543 (2d Cir.1968), the Rule has been interpreted also to give the government, in limited instances, *see infra*, an opportunity to challenge a sentence. *See, e.g., United States v. Ortega*, 859 F.2d 327, 334–35 (5th Cir.1988), *cert. denied*, 489 U.S. 1027, 109 S.Ct. 1157, 103 L.Ed.2d 216 (1989). Also, old Rule 35 in general was regarded as "afford[ing] 'the judge an opportunity to reconsider the sentence in the light of any further information about the defendant or the case which may have been presented to him in the interim,'" 1983 advisory committee note (quoting *Ellenbogen*, 390 F.2d at 543), and permitting "the defendant (and *perhaps* the government) to come forward with new evidence." 1991 Amendment, advisory committee note (emphasis added).

On the other hand, it also has oft been said that an old Rule 35(a) inquiry in particular is limited to the record, *see, e.g., Semet v. United States*, 422 F.2d 1269, 1271 (10th Cir. 1970); *Petro v. United States*, 368 F.2d 807, 808 (6th Cir.1966); *Gilinsky v. United States*, 335 F.2d 914, 916–17 (9th Cir.1964); *Johnson v. United States*, 334 F.2d 880, 883 (6th Cir.), *cert. denied* 380 U.S. 935, 85 S.Ct. 942, 13 L.Ed.2d 822 (1964), and a Rule 35(a) motion "is not an appropriate procedure for going outside the record in order to mount a collateral attack" on the underlying judgment of conviction. Charles A. Wright, Federal Practice and Procedure § 582, at 385–86 (1982).[8] It has recently been suggested, however, that these statements only direct the preclusion of extra-record materials that challenge the underlying judgment of conviction, *see United States v. Moskovits*, 815 F.Supp. 147, 150 n. 8 (E.D.Pa.1993), as that was the type of attack that characterized many of the old cases which limited motions to correct illegal sentences to the established record. *See, e.g., Semet*, 422 F.2d at 1271 (attempting to introduce evidence that weapon used in a robbery offense was not life-threatening as charged); *Petro*, 368 F.2d at 808 (same). Taking this view, the district court in *Moskovits* reasoned that new evidence which only calls into question an application of sentencing law can be considered on an old Rule 35(a) motion. Thus, the court concluded that a defendant's old Rule 35(a) motion, attacking the validity of a prior conviction from Mexico which had been used as a predicate for an enhanced sentence under a mandatory minimum scheme, could be based on evidence from outside the record. *See id.* at 150 & n. 8.[9]

---

7. Of course, the findings in Masters' and Keatings' resentencing after remand in *Masters I* cannot be applied to Corbitt's case.

8. New evidence, however, always could be considered in an old Rule 35(b) motion for reduction in sentence, as a 35(b) motion was essentially a "plea for leniency addressed to the discretion of the sentencing court," Wright, Federal Practice and Procedure § 586, at 398–99.

9. The taking of new evidence as part of an old Rule 35(a) motion, however, is not a frequently documented practice. This is not surprising as the old Rule existed for most of its days under a regime devoid of substantive law of sentencing.

Not until the rise of mandatory minimums and the Sentencing Guidelines were judges required to make factual findings as part of the sentencing decision. Only then could there be such a thing as new evidence that could confute the legality of sentences without challenging the validity of underlying convictions.

Nonetheless, the *Moskovits* court believed that the broad language in the 1983 Rule 35 advisory committee note, quoted *supra* at 8, indicates an attack on the legality of a sentence could come from beyond the face of the record. *See Moskovits*, 815 F.Supp. at 150. We are doubtful that the advisory note stands for so much. The 1983 amendments to Rule 35 were made entirely to

First of all, whatever the extent of a defendant's ability to produce new evidence and request concomitant new factual findings as part of an old Rule 35(a) motion,[10] that rule has never been thought to provide the government an opportunity to seek new findings which, if timely made, would have rendered the original sentence improper. Those cases finding district court jurisdiction over government-made old Rule 35 motions did not hold or imply that 35(a) conferred on district courts the jurisdiction to make new findings at the government's request in order to declare a defendant's theretofore unimpeachable sentence illegal. *See, e.g., Ortega,* 859 F.2d at 334–35 (finding jurisdiction under old Rule 35(a) for the government's attempt to correct a sentence not authorized by the offense of conviction); *Llerena v. United States,* 508 F.2d 78, 80–81 (5th Cir.1975) (same). No one ever suggested that old Rule 35(a) gave the government additional bites at the apple.

Moreover, we disagree with the *Moskovits* conclusion that traditional interpretations of Rule 35 were of such a limited reach as to countenance, under the authority of the rule, the making of additional factual findings that would justify substituting a new sentence for the sentence originally sought and imposed. While the "public interest in seeing that defendants are lawfully sentenced by courts that have properly assumed jurisdiction" is strong enough to override the "importance of finality in our judicial system" in the case of facially illegal sentences, *United States v. Henry,* 709 F.2d 298, 313 (5th Cir.1983) (en banc) (plurality opinion), "Rule 35 was not

intended as a vehicle to reopen final judgments long since past ripe for review." *Id.* at 314 n. 23. Old Rule 35(a) made available a mechanism simpler than the commencement of a separate civil action under 28 U.S.C. § 2255 (the collateral relief statute for federal prisoners) by which it could be ensured that a sentence invalid on the existing record was not carelessly imposed. The rule was not intended to provide the government or defendants multiple rounds of sentencing in which they could rectify earlier oversights in developing a complete record upon which to base sentencing.

■ *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), is demonstrative. There, the Supreme Court observed that "reexamin[ing] errors occurring at trial *or other proceedings prior to* the imposition of sentence" is not the function of the provision permitting correction of an "illegal sentence." *Id.* 368 U.S. at 430, 82 S.Ct. at 472 (emphasis added). To illustrate that point, *Hill* contrasted *Heflin v. United States,* 358 U.S. 415, 418, 79 S.Ct. 451, 453, 3 L.Ed.2d 407 (1959), where "the only issue was whether the sentence imposed was illegal on its face." *Id.* n. 9 (internal quotation omitted). Even more tellingly, the *Hill* Court clearly counted sentencing proceedings among "other proceedings prior to the imposition of sentence," whose finality Rule 35 motions were not intended to upset. The defendant in *Hill* was in fact attempting to challenge the adequacy of the *sentencing* procedure in his case, and this the Court said was outside the scope of a Rule 35 attack on a illegal sentence.[11] Although *Hill* did not involve a

---

10. Note that a defendant has a statutory remedy, 28 U.S.C. § 2255, (under which new evidence may be considered, *see United States v. Frye,* 738 F.2d 196, 198 (7th Cir.1984)) that will sometimes be available even if he styles his request for relief as a Rule 35 motion. *See United States v. Flenory,* 876 F.2d 10, 11 (3rd Cir.1989); *cf. Hill v. United States,* 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962) (treating a defendant's motion as a motion to correct an illegal sentence under Rule 35 although denominated as a § 2255 petition).

11. It was in response to this ruling that Congress amended Rule 35 to also permit challenges, for a limited period after sentencing or affirmance, to sentences "imposed in an illegal manner." *See*

paragraph (b), not at all to paragraph (a). Specifically, the committee note addressed a change to Rule 35(b) clarifying a particular circumstance under which a district court could reduce a sentence. As indicated, *see supra* note 8, a Rule 35(b) motion for reduction of sentence *is* much like a second round of sentencing. Within the time constraints set out in 35(b), a convicted defendant is permitted to make a renewed appeal to the discretion of the district court and seek favorable reconsideration of his just deserts. New information is clearly an appropriate part of such an exercise. That is the context of the 1983 note and the case from which it draws its language, *United States v. Ellenbogen,* 390 F.2d 537, 543 (1968). No connection to old Rule 35(a) and its plainly different purpose is apparent.

claim of inadequate fact finding at sentencing, the Supreme Court's explication does indicate that a Rule 35 attack on an illegal sentence is in all likelihood not an appropriate device for late supplementation of the record. In light of this history, we refuse at this late date to endorse the expansive interpretation of old Rule 35(a) proposed by the government. Here, at the time Corbitt was originally sentenced there was no finding on the record in his case as to the termination date of the conspiracy. In fact, the government did not seek such a finding then or appeal Corbitt's pre-Guidelines sentence. It cannot now reopen his case via old Rule 35(a) for this further factual determination.[12]

In addition, it makes no difference that the importance of a finding about the conspiracy's termination date may not have been apparent at the time of the original sentencing because *Fazio* had yet to be decided. First of all, when Corbitt was sentenced, case law indicating that straddle conspiracies warrant Guidelines sentencing was already on the books in other circuits. *See, e.g., United States v. Stewart,* 878 F.2d 256, 259 (8th Cir.1989) (decided June 29, 1989); *United States v. White,* 869 F.2d 822, 826 (5th Cir.1989) (per curiam) (decided March 31, 1989), *cert. denied,* 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 and 493 U.S. 1001, 110 S.Ct. 560, 107 L.Ed.2d 555 (1989). Thus, although the law regarding proper sentencing for straddle conspiracies had not yet crystallized in this circuit, the position this circuit would eventually take in *Fazio* should hardly have been surprising at the time of Corbitt's sentencing. Indeed, Masters and Keating were not bashful about seeking Guidelines sentences.

More fundamentally, even an unanticipatable development in the law in a direction favorable to the government cannot turn an old Rule 35(a) motion into something

which it is not—an opportunity for the government to reopen sentencing fact finding. The rule simply does not represent a staging ground for that kind of sweeping invasion into the finality of sentences. Given that Rule 35 has always been considered a defendant-oriented rule, it is especially difficult to believe that a change in law favorable to the government could be a basis under 35(a) for renewing fact finding at the government's request. Authorizing such an intrusion into a convicted defendant's repose would be, to say the least, highly unusual, *see Teague v. Lane,* 489 U.S. 288, 305, 109 S.Ct. 1060, 1072, 103 L.Ed.2d 334 (1989) (treating as a forgone conclusion that cases which have become final but were decided in defendants' favor based on an interpretation of law subsequently found erroneous cannot be reopened), and would certainly have not been accompanied by old Rule 35's relatively quiet history as a governmental sword. We, therefore, hold that the district court lacked jurisdiction under old Rule 35(a) to resentence Corbitt under the Sentencing Guidelines based on a new finding as to the termination date of his conspiracy.[13]

### III.

For these reasons the judgment of the district court is vacated and Corbitt's original pre-Guidelines sentence imposed by the district court on August 28, 1989, is reinstated.

VACATED.

Federal Rule of Criminal Procedure 35, 1966 Amendment, advisory committee note. Instead of controverting *Hill*'s seeming suggestion that the "illegal sentence" provision allows only challenges of facial illegality, by so amending the rule, Congress most likely memorialized such an understanding.

**12.** The fact that this determination can be, and in fact was, based solely upon old evidence is not significant. Old Rule 35(a) simply does not envision additional development of the record from within or without.

**13.** Thus, we will not explore any double jeopardy or due process concerns potentially implicated by the circumstances of this case.