20-1522-ag(L)
305 West End Holding, LLC v. NLRB

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of May, two thousand twenty-one.

PRESENT:  PIERRE N. LEVAL,
          RAYMOND J. LOHIER, JR.,
          RICHARD J. SULLIVAN,
                    *Circuit Judges*.

------------------------------------------------------------------

305 WEST END HOLDING, LLC, d/b/a 305 WEST
END AVENUE OPERATING, LLC, ULTIMATE
CARE ASSISTED LIVING MANAGEMENT, LLC, A
DIVISION OF THE ENGEL BURMAN GROUP,
d/b/a ULTIMATE CARE MANAGEMENT, LLC,

          *Petitioners-Cross-Respondents*,

          v.                                    No. 20-1522-ag(L)
                                                No. 20-1973-ag(XAP)

NATIONAL LABOR RELATIONS BOARD,

*Respondent-Cross-Petitioner.*[*]

------------------------------------------------------------------

| | |
|---|---|
| FOR PETITIONERS-CROSS-RESPONDENTS: | JOHN R. HUNT, Stokes Wagner, ALC, Atlanta, GA (Paul E. Wagner, Stokes Wagner, ALC, Ithaca, NY, *on the brief*) |
| FOR RESPONDENT-CROSS-PETITIONER: | BARBARA A. SHEEHY, Attorney (David Habenstreit, Assistant General Counsel, Ruth E. Burdick, Deputy Associate General Counsel, Elizabeth Heaney, Supervisory Attorney, *on the brief*), *for* Peter Sung Ohr, Acting General Counsel, National Labor Relations Board, Washington, DC |

UPON DUE CONSIDERATION of this petition for review and cross-petition for enforcement of the April 29, 2020 decision and order of the National Labor Relations Board, it is hereby ORDERED, ADJUDGED, AND DECREED

---

[*] The Clerk of Court is directed to amend the caption of this case as set forth above.

that the petition for review is DENIED and the cross-petition for enforcement is GRANTED.

Petitioners 305 West End Holding, LLC ("305 West End") and Ultimate Care Assisted Living Management, LLC ("Ultimate Care," and, together with 305 West End, "Petitioners") seek review of an April 29, 2020 decision and order of the National Labor Relations Board (NLRB), which cross-petitions for enforcement of its order. The NLRB found that 305 West End, in connection with its procurement of a senior living facility, refused to bargain with the Local 2013 of the United Food & Commercial Workers, the union that represented the majority of the employees at the facility, in violation of Section 8(a)(5) and (1) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(5), (1), did not hire the union's shop steward because of anti-union animus, in violation of Section 8(a)(3) and (1) of the NLRA, 29 U.S.C. § 158(a)(3), (1), and was a joint employer with Ultimate Care under the NLRA. Accordingly, the NLRB ordered the Petitioners to recognize and bargain with the incumbent union, offer employment to the union's former shop steward, and pay her lost wages. We assume the parties' familiarity with the underlying facts and procedural history,

3

to which we refer only as necessary to explain our decision to deny the petition for review and grant the petition for enforcement.

1. Refusal to Recognize and Bargain

Substantial evidence supports the NLRB's conclusion that 305 West End was required to bargain with the union because the union was supported by a majority of employees within the relevant bargaining unit. As relevant here, the NLRA requires an employer "to bargain collectively with the representatives of [its] employees." 29 U.S.C. § 158(a)(5). A union is a bargaining unit's representative if it is supported by a majority of the employees in that unit. See id. § 159(a); NLRB v. Gissel Packing Co., 395 U.S. 575, 595–600 (1969). "[T]he employees' choice of a union is not negated by 'a mere change of employers or of ownership in the employing industry.'" NLRB v. Simon DeBartelo Grp., 241 F.3d 207, 210 (2d Cir. 2001) (quoting Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 37 (1987)). Rather, "a successor employer inherits its predecessor's bargaining obligations whenever it structures its business in a manner that maintains (a) substantial continuity between old and new working

4

conditions and (b) a total complement among which the old employees form a majority." Id. (quotation marks omitted).

It is undisputed that at the time 305 West End acquired the business from Esplanade Partners Ltd. ("Esplanade"), the union had a collective-bargaining agreement with Esplanade. Ordinarily, a union is "entitled under [NLRB] precedent to a conclusive presumption of majority status during the term of any collective-bargaining agreement, up to three years." Auciello Iron Works, Inc. v. NLRB, 517 U.S. 781, 786 (1996) (footnote omitted).

The Petitioners invoke an exception to that rule under NLRB precedent, which provides that the presumption does not apply if the agreement was clearly intended as merely an administrative arrangement for the benefit of union members only. See Ace-Doran Hauling & Rigging Co., 171 NLRB 645, 646 (1968); Arthur Sarnow Candy Co., 306 NLRB 213, 215–16 (1992), enforced, 40 F.3d 552 (2d Cir. 1994). The Administrative Law Judge (ALJ) found that the exception does not apply, the NLRB adopted the ALJ's findings, and we see no error in those conclusions. Nothing in the collective-bargaining agreement itself suggests that the contract was designed solely for the benefit of union members. And

while the union did not perfectly follow the terms of the bargaining agreement, the evidence does not compel the conclusion that the union was a sham established to serve union members only. To the contrary, the record supports the NLRB's conclusion that the union secured equal benefits, including a pay raise, for employees who did not pay union dues.[1]

The NLRB's conclusion that there was substantial continuity in the facility's working conditions is also supported by substantial evidence. See Simon DeBartelo Grp., 241 F.3d at 210–11. There was no break in service during the transition from Esplanade to 305 West End, the services offered remained the same, and the many Esplanade employees who were retained noticed no difference in their responsibilities. See id. at 211. And while 305 West End and Ultimate Care insist that they sought a license to operate the building as an assisted-living facility and that they renovated the building, "it lies with the Board, not this court, to make the fine distinctions and subtle assessments

---

[1] Although the Petitioners challenge the union's validity in view of the fact that two supervisors improperly paid union dues, this fact, standing alone, is not a valid defense to a bargaining order, at least where, as here, the supervisors are no longer part of the unit. See Nazareth Regional High Sch. v. NLRB, 549 F.2d 873, 880 & n.4 (2d Cir. 1977).

necessary to decide whether, in any one unique set of circumstances, the nature and degree of similarity between enterprises suffices to meet the 'substantial continuity' criterion." Id. at 213. We are not persuaded that the NLRB overstepped the bounds of its authority.

Finally, the record supports the NLRB's finding that Esplanade employees formed a majority of the Petitioners' initial complement of employees and that when the Petitioners assumed the business on December 5, 2016, it was "in normal or substantially normal" operations. Fall River Dyeing, 482 U.S. at 49 (quotation marks omitted). On that date, nearly all of the employees in the relevant bargaining unit had previously worked for Esplanade. Although the Petitioners argue that many Esplanade employees were hired only because of a mandatory-retention ordinance, see N.Y.C. Admin. Code § 22-505, the record supports the NLRB's finding that the Petitioners would have hired those employees even if they were not required by law to do so. Moreover, even if the Petitioners had replaced every single employee covered by the mandatory-retention ordinance, former Esplanade employees would still have constituted

7

the majority of the Petitioners' employees within the bargaining unit. See Simon DeBartelo Grp., 241 F.3d at 210.

2. Refusal to Hire Trinidad Hardy

The NLRB also found that the Petitioners did not hire the union's shop steward, Trinidad Hardy, because of her union activity, and it ordered the Petitioners to offer Ms. Hardy employment and to pay her lost wages. The Petitioners argue that Ms. Hardy is not entitled to such relief because she agreed to "release" Esplanade "and [its] affiliates, successors and assigns, from all claims," including those arising under the "National Labor Relations Act." App'x at 2587. The Petitioners contend that 305 West End is Esplanade's successor not because it is its successor employer under the NLRA, but instead because it purchased the building from Esplanade.

We see no reason to disturb the NLRB's conclusion that the release does not protect the Petitioners from liability for their own independent violations of law, and instead covers only claims arising out of Esplanade's conduct. We therefore need not consider the NLRB's alternative argument that a release between private parties cannot  limit the NLRB's "broad discretion in fashioning

8

remedial orders." NLRB v. G&T Terminal Packaging Co., 246 F.3d 103, 128 (2d Cir. 2001).

### 3. Joint Employers

We also reject the Petitioners' challenge to the NLRB's finding that 305 West End and Ultimate Care are joint employers for purposes of the NLRA. In determining whether such a relationship exists, "[r]elevant factors include commonality of hiring, firing, discipline, pay, insurance, records, and supervision." NLRB v. Solid Waste Servs., Inc., 38 F.3d 93, 94 (2d Cir. 1994). Here, Ultimate Care managers interviewed job applicants and decided whom to hire. After the facility changed ownership, Ultimate Care managers routinely visited the property to ensure that the quality of the work met its standards. Although the frequency of their visits decreased over time, they remained responsible for discipline, hiring, and firing. Witnesses for the Petitioners acknowledged that Ultimate Care "runs" the facility and "is the management team." Ultimate Care also controlled 305 West End's payroll records. Therefore, the NLRB's finding is supported by substantial evidence.

We have considered the Petitioners' remaining arguments and conclude that they are without merit.  For the foregoing reasons, the petition for review is DENIED and the cross-petition for enforcement is GRANTED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court