[602 NYS2d 337]

ANTONIO RODRIGUES et al., Respondents, v CITY OF NEW YORK et al., Defendants, and ROBERT M. MORGENTHAU, as District Attorney of the County of New York, et al., Appellants.

First Department, September 21, 1993

80

### APPEARANCES OF COUNSEL

*Norman A. Bloch* of counsel *(Douglas E. Grover* with him on the brief; *Grover & Bloch,* attorneys), for Melvin Eckhaus, appellant.

*Ann P. Wyllie* of counsel *(Mark Dwyer* with her on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), *pro se,* and for Edward Mechmann and another, appellants.

*Alexander J. Wulwick* of counsel *(Bonita E. Zelman,* attorney), for respondents.

### OPINION OF THE COURT

SULLIVAN, J.

In October 1987, defendant Melvin Eckhaus, an employee of United Brotherhood of Carpenters and Joiners of America, Local 135 (Local 135), and a delegate of the Local to the District Council, was arrested for accepting a bribe from a

contractor. Thereafter, in exchange for an agreement "void-ing" his arrest, Eckhaus became a paid informer for the New York County District Attorney's office in an investigation into corruption in the construction industry. He was "wired" with a recording device and, over approximately an 18-month period, recorded his conversations with, among others, plain-tiff Antonio Rodrigues, president of plaintiff Inner City Dry-wall Corporation, a minority contractor employing some 400 workers. In July 1989, Rodrigues and the corporation were indicted on charges that they had bribed Eckhaus and for related offenses. At that time Inner City had several contracts with the City of New York for construction and drywall installation at several City-owned sites. Following Rodrigues' arrest, these contracts were terminated. On December 21, 1989, the indictment was dismissed on the District Attorney's own motion; the case was never re-presented.

Meanwhile, beginning on or about November 30, 1989, in connection with a separate investigation into plaintiffs' finan-cial affairs, including the nonpayment and nonfiling of corpo-rate income tax returns, fraud with respect to union benefit funds, and conspiracy to avoid payment and collection of City, State and Federal income taxes, the District Attorney's office issued numerous Grand Jury subpoenas to Inner City's cus-tomers, suppliers and business contacts. Although the subpoe-nas were made returnable before the Grand Jury at 100 Centre Street, at the time of their issuance and until the commencement of this action no Grand Jury had been con-vened to hear evidence against plaintiffs, and when the wit-nesses responded to the subpoenas they were directed to the District Attorney's office where they allegedly gave deposition-type statements. On June 19, 1990, two of these subpoenas became the subject of a motion to quash in the Supreme Court, New York County. That motion was denied (John A.K. Bradley, J.).

On or about June 23, 1990, plaintiffs commenced this action against, *inter alia,* District Attorney Morgenthau and Assis-tant District Attorneys Mechmann and Mass (the prosecutor defendants), District Council of New York City and vicinity United Brotherhood of Carpenters and Joiners of America (District Council), Local 135 and Eckhaus. The complaint alleged causes of action for false arrest, malicious prosecution, abuse of process, dissemination of false information, civil rights violations, negligence and negligent supervision on the part of the District Attorney, and breach of and conspiracy to

induce a breach of the union contracts, plaintiffs alleging that the prosecutor defendants, through Eckhaus, engaged in an extortion scheme to harass and destroy them and that said defendants' conduct has brought them to financial ruin. All of these causes of action are asserted against the background of a claim, never pleaded in the complaint, however, that the indictment was procured for political reasons. Several defendants, including the prosecutor defendants and Eckhaus, moved to dismiss the complaint pursuant to, *inter alia*, CPLR 3211 (a) (7); plaintiffs cross-moved to amend the complaint.

Finding that plaintiffs were entitled to amend the complaint without leave of the court, the IAS Court deemed the dismissal motions directed to the amended complaint and dismissed numerous causes of action, but found, with respect to the prosecutor defendants and Eckhaus, that the fifth cause of action stated a claim for civil rights violations in three respects, to which plaintiffs' civil rights claim was limited: the prosecutor defendants' alleged abuse of process based on the issuance of Grand Jury subpoenas; their alleged press leaks of false information; and their "investigative activities", including the extortion and entrapment of plaintiffs committed through Eckhaus, not taken in pursuit of the bribery indictment itself; that, in the absence of allegations of actual or special damages, the third cause of action against the prosecutor defendants for abuse of process must be dismissed, with leave to replead, and that the thirteenth cause of action states a claim for intentional interference with Inner City's collective bargaining agreement with the unions. The court held that since it was alleged that Eckhaus was a "paid informer" of the District Attorney's office he could be classified as an agent of that office. Even as a private individual, the court held, Eckhaus could be subject to liability under 42 USC § 1983, if, as alleged, he willfully participated in the prosecutor defendants' actions. The prosecutor defendants and Eckhaus appeal, arguing that the entire complaint should have been dismissed as against them. We affirm.

At the outset, we note, with respect to the IAS Court's limitation of the civil rights cause of action to the three aforementioned aspects of the prosecutor defendants' actions "not taken in pursuit of the bribery indictment itself", that the amended verified complaint alleges that "[b]eginning on or about October 7, 1987 and continuously continuing thereafter for approximately 18 months," the prosecutor defendants "participated in and directed defendant * * * Eckhaus * * *

in attempts to extort money payments as part and parcel of a plan and/or scheme to unlawfully entrap plaintiffs", that "[b]eginning in or about June of 1989 and continuing thereafter" the prosecutor defendants released to the media "false information calculated and designed to create an atmosphere hostile to the rights of plaintiffs", and that "[o]n or about November 30, 1989 and continuing thereafter" Assistant District Attorney Mechmann was permitted by Morgenthau and Mass, "both of whom knew and/or reasonably should have known of [his] misuse of subpoena power," to issue numerous Grand Jury subpoenas against plaintiffs at a time when no Grand Jury had been convened to hear evidence against plaintiffs.

■ The prosecutor defendants argue, initially, that the civil rights cause of action is insufficient since it is set in broad, conclusory terms and, with the exception of the issuance of Grand Jury subpoenas by Mechmann, fails to point to any individual conduct on their part. In our view, however, these allegations sufficiently specify both the conduct on which the cause of action is based and defendants' personal involvement. *(See, McKinnon v Patterson,* 568 F2d 930, 934 [2d Cir 1977], *cert denied* 434 US 1087; *see also, Heller v Plave,* 743 F Supp 1553, 1566, quoting *Greason v Kemp,* 891 F2d 829, 836 [a supervisor can be held liable for civil rights violations where his " 'conduct is causally related to the constitutional violation committed by his subordinate' "].)

While a claim of entrapment is not sufficient to state a civil rights cause of action under 42 USC § 1983 since entrapment does not violate a constitutional right *(see, Johnston v National Broadcasting Co.,* 356 F Supp 904, 908; *see also, Jones v Bombeck,* 375 F2d 737, 738), the allegations of entrapment here must not be viewed in isolation but in the context of the other allegations of tortious conduct, which, taken as a whole, if proven, would establish a pattern of "systematic and intentional harassment" by government officials aimed at injuring plaintiffs' business. *(Chalfy v Turoff,* 804 F2d 20, 23.) This is a cognizable wrong under section 1983. *(Supra; see also, Manti v New York City Tr. Auth.,* 165 AD2d 373, 378.)

Similarly, the allegations of press leaks, arguably insufficient in themselves to serve as the basis for a section 1983 claim, are significant when viewed as part of this alleged pattern. Thus, in alleging the prosecutor defendants' attempts at extortion and entrapment, the issuance of numerous Grand Jury subpoenas without any legal basis therefor, and the leaks

to the media of false information, "calculated and designed to create an atmosphere hostile to" plaintiffs' rights, all of which, allegedly, were intended to and did cause injury to their business, plaintiffs have set forth a due process deprivation of property and therefore a claim for Federal civil rights relief. *(See, Espanola Way Corp. v Meyerson,* 690 F2d 827, *cert denied* 460 US 1039.)

■ The prosecutor defendants argue that they are entitled to absolute immunity with respect to the claim for abuse of process as a section 1983 violation. We disagree. "The entitlement of a prosecutor to absolute immunity from a claim for damages against him in his individual capacity on account of his official actions depends principally on the nature of the function performed, not on the office itself." *(Ying Jing Gan v City of New York,* 996 F2d 522, 530 [2d Cir 1993].) Where the prosecutorial activities are " 'intimately associated with the judicial phase of the criminal process'," e.g., the " 'initiat[ion of] a prosecution'," the prosecutor is entitled to absolute immunity from liability under section 1983. *(Supra,* at 530, quoting *Imbler v Pachtman,* 424 US 409, 430, 431.) However, prosecutorial activities that are characterized as administrative or investigative, such as the issuance of Grand Jury subpoenas, merit less protection. *(Ying Jing Gan v City of New York, supra,* at 528.) Thus, prosecutors acting in an " 'investigative' " or " 'administrative' " capacity are entitled only to qualified immunity. *(Barr v Abrams,* 810 F2d 358, 361 [2d Cir 1987].)* The Supreme Court adhered to this "functional" approach in *Burns v Reed* (500 US 478, —, 111 S Ct 1934, 1943), where it held, quoting *Imbler (supra,* at 430), that "advising the police in the investigative phase of a criminal case is [not] so 'intimately associated with the judicial phase of the criminal process' [citation omitted] that it qualifies for absolute immunity", and, most recently, in *Buckley v Fitzsimmons* (509 US —, —, 113 S Ct 2606, 2617 [1993]), where the Court held that when prosecutors are conducting "investigative work * * * in order to decide whether a suspect may be arrested" they should not be endowed with absolute immunity.

Defendants argue that prosecutorial activities which relate to Grand Jury proceedings are quasi-judicial acts absolutely immune from liability. This argument overlooks the fact that no Grand Jury had been convened and that defendants are alleged to have used the subpoenas for the purpose of conducting their own investigation into plaintiffs' affairs. In any

event, as the *Buckley* Court held, even if the prosecutors later called a Grand Jury to consider the evidence assembled in a preliminary investigation, their work is not "retroactively transform[ed] * * * from the administrative into the prosecutorial." (509 US, *supra,* at —, 113 S Ct, *supra,* at 2617.)

Moreover, although a prosecutor is entitled to absolute immunity for those acts " 'within the scope of his duties' " *(Rudow v City of New York,* 822 F2d 324, 327, quoting *Imbler v Pachtman,* 424 US, *supra,* at 410), where the prosecutor acts " 'in the clear absence of all jurisdiction' " and " 'without any colorable claim of authority, he loses the absolute immunity he would otherwise enjoy.' " *(Supra,* at 328, quoting *Barr v Abrams,* 810 F2d, *supra,* at 361.)

Such a situation exists here. The law does not confer upon a prosecutor the power to employ a subpoena solely to conduct an investigation or to subpoena witnesses to attend his office or any other place where a Grand Jury or court is not convened. *(People v Boulet,* 88 Misc 2d 353, 354; *see also, People v Natal,* 75 NY2d 379, 385; CPL 610.20.) "It has long been recognized that District Attorneys may not issue subpoenas except through the process of the court, and they exercise the power to compel witnesses to produce physical evidence only before a Grand Jury or a court where a proceeding is pending." *(People v Natal, supra,* at 385.) Since no Grand Jury was convened, it is clear that the prosecutor defendants stepped outside the scope of their authority in using the device of a Grand Jury subpoena to conduct their own investigation. Thus, insofar as the issuance of the subpoenas is concerned, these defendants acted in the absence of authority and are therefore not entitled to absolute immunity.

Nor are the prosecutor defendants entitled to absolute immunity with respect to the State law claim for abuse of process based on the issuance of Grand Jury subpoenas. Under New York law, a District Attorney, in prosecuting crime, is performing a quasi-judicial function and as such is entitled to absolute immunity. *(Arteaga v State of New York,* 72 NY2d 212, 217, n 1.) "The absolute immunity for quasi-judicial discretionary actions is founded on public policy and is generally said to reflect the value judgment that the public interest in having officials free to exercise their discretion unhampered by the fear of retaliatory lawsuits outweighs the benefits to be had from imposing liability." *(Supra,* at 216.) Thus, like the Federal courts, the courts of this State take a functional approach when analyzing claims of immunity.

However, while Federal causes of action based on investigative acts on the part of a prosecutor are not immunized *(see, e.g., Liffiton v Keuker,* 850 F2d 73, 76), a prosecutor, as a quasi-judicial officer, is, with respect to State law claims, immune from civil suit for official acts performed in the investigation and prosecution of criminal charges. *(Schanbarger v Kellogg,* 35 AD2d 902, *mot to dismiss appeal granted* 29 NY2d 649, *cert denied* 405 US 919; *see also, Manceri v City of New York,* 12 AD2d 895.) Thus, with respect to State law claims, there is some authority for conferring an immunity upon prosecutors somewhat broader than that to which they are entitled under Federal law. *(But see, Cunningham v State of New York,* 71 AD2d 181, 183 [prosecutor engaged in the role of an investigator "should not enjoy absolute but only qualified immunity"].)

Not even a broadened scope of absolute immunity, however, would afford defendants protection for plaintiffs' State law claims. Since, as noted, the law confers no power upon the District Attorney to employ a subpoena for the purpose of conducting his own investigation *(People v Boulet,* 88 Misc 2d, *supra,* at 354; CPL 610.20; *see also, People v Natal,* 75 NY2d, *supra,* at 385), a prosecutor may not claim that he was engaged in a quasi-judicial act when he issues Grand Jury subpoenas under such circumstances. *(Drake v City of Rochester,* 96 Misc 2d 86, 99, *affd* 74 AD2d 996.) And, while the public interest is served by "having officials free to exercise their discretion unhampered by the fear of retaliatory lawsuits" *(Arteaga v State of New York,* 72 NY2d, *supra,* at 216), when an official is acting in knowing violation of law, " ' "he *should* be made to hesitate." ' " *(Burns v Reed, supra,* 500 US 478, —, 111 S Ct 1934, 1944.) Accordingly, absolute immunity does not protect the prosecutor defendants with respect to the State law claims.*

■ Nor is the abuse of process claim barred by collateral estoppel based on Justice Bradley's denial of plaintiffs' motion to quash two Grand Jury subpoenas issued against the State

---

* Defendants argue that the doctrine of absolute immunity also protects Eckhaus since New York's rule protects not only prosecutors but persons acting under their direction and control as well. *(See, Schanbarger v Kellogg, supra,* 35 AD2d 902.) Eckhaus, however, is not named in the causes of action based on the issuance of Grand Jury subpoenas, the only State law causes of action as to which defendants claim prosecutorial immunity. Thus, even if the prosecutors were entitled to immunity, such immunity would not benefit Eckhaus.

Bank of Westchester and Citicorp and Citibank. Since Justice Bradley decided this motion after conducting an ex parte discussion with the prosecutors, in camera, regarding the Grand Jury investigation, we need go no further than to say that plaintiffs were denied full and fair opportunity to contest that decision. *(Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65, 71.)

■ With respect to the cause of action for tortious interference with contractual relations, contrary to defendants' contention, the pleadings were not silent as to the prosecutor defendants' claimed interference with the collective bargaining agreement between plaintiff Inner City and the union defendants, District Council and Local 135. The amended complaint expressly alleges that Eckhaus, under the direction of Mechmann, Mass and O'Hara and with the knowledge and consent of Morgenthau, attempted to extort money from plaintiffs; that to accomplish the extortion Eckhaus threatened to destroy Inner City's business by causing and instigating work stoppages, slowdowns or sabotage if Inner City did not make illegal payments to him; that Eckhaus did in fact cause such work stoppages, slowdowns and sabotage to occur and that plaintiffs were seriously injured thereby. We think that these allegations, as the IAS Court found, can fairly be construed to aver that the "prosecutor defendants * * * incit[ed] and encourage[ed Eckhaus] to 'sabotage' Inner City by providing workers who engaged in work stoppages and slow downs, in order to extort bribes from plaintiffs" and therefore "the intentional pursuit by defendants of a breach of plaintiffs' contract with the union."

■ Finally, the prosecutor defendants and Eckhaus argued that the action should be stayed pending arbitration of the dispute between plaintiffs and the union defendants. Unlike the union defendants, however, these defendants never moved for such a stay before the IAS Court, which stayed several causes of action as to the former and directed the parties to proceed to arbitration. Having failed to seek such relief before the IAS Court, the prosecutor defendants and Eckhaus may not do so for the first time on appeal. *(See, Mullany v Eiseman,* 125 AD2d 457, 458-459.)

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered on or about August 30, 1991, which, *inter alia,* denied the motions of defendants Morgenthau, Mechmann, Mass and Eckhaus, pursuant to CPLR 3211 (a) (7), to dismiss the fifth and thirteenth causes of

action and granted the motion to dismiss the third cause of action with leave to replead, should be affirmed, without costs or disbursements.

MURPHY, P. J., ROSENBERGER and KUPFERMAN, JJ., concur.

Order, Supreme Court, New York County, entered August 30, 1991, affirmed, without costs.