■ CHARLES MONTANO, Appellant, v CITY OF WATERVLIET et al., Respondents, et al., Defendants. [850 NYS2d 273]—

---

Spain, J. Appeal from an order of the Supreme Court (McCarthy, J.), entered October 16, 2006 in Albany County, which granted a motion by defendants City of Watervliet, City of Watervliet Board of Appeals and Mark R. Gilchrist for summary judgment dismissing the complaint against them.

Plaintiff is the owner of a large commercial building located in the City of Watervliet, Albany County, in a manufacturing zone. In early 2000, defendant Starfire Systems, Inc., a business engaged in the manufacturing of ceramic and ceramic compos-

ites, and its president, defendant Walter Sherwood, entered into negotiations to lease the building from plaintiff, who was then under contract to purchase it. Sherwood hired defendant William Bradley, president of defendant Brunswick Research, Inc., to advise him on the feasability of a relocation to this site and with respect to the process of obtaining any permits. In June 2000, apparently due to the fact that the subject property was located within 200 feet of a residential district, plaintiff and Starfire jointly applied to defendant City of Watervliet Board of Appeals (hereinafter the Board) for a use variance to use the building for polymer synthesis and manufacturing of ceramics and its composites, processes which reportedly produce hazardous chemicals requiring storage and removal. After a hearing, the Board granted the variance, subject to specified conditions relating to compliance with fire, building code and city ordinances requirements and related inspections.

Thereafter, plaintiff purchased the property, made extensive improvements, and entered into a five-year lease with Starfire, contingent upon Starfire obtaining necessary governmental approval and giving both parties the right to terminate the lease if such approval were not timely obtained. As later amended, the rent commencement date under the lease was January 2001. Starfire paid a security deposit and a few monthly lease payments, but never occupied the building and instead continued to pursue alternative sites with Bradley's assistance, ultimately determining that this site was not feasible.

In April 2001, Bradley and Starfire's staff arranged a meeting with city officials, including defendant Mark R. Gilchrist, the City's zoning officer and fire inspector, and an emergency response team leader and an engineer. Bradley, who had from the outset viewed the subject property as unsuitable for Starfire's business, presented more detailed information regarding the scope of Starfire's intended use of chemicals and the dangers of hypothetical chemical spills and fires, and other "worst case scenarios" were considered with regard to the nearby residential neighborhood. Thereafter, Gilchrist sent Starfire a letter dated May 10, 2001 indicating that the preconstruction planning meeting with Bradley and others had brought to the City's attention "the exact nature of the proposed occupancy [and] [d]ue to health, safety and welfare issues for the residents living in the area around [the subject building], the Building Department will *not* issue a permit for renovations. Even with all the proposed safeguards and planning, an accident at this site could very well be disastrous to the resident population." Notably, there was *no pending permit or certificate of occupancy applica-*

tion; the record does not reflect that any form of building permit was sought or that any administrative appeal from Gilchrist's decision was pursued. Starfire thereafter ceased paying rent under the lease and relocated its business to another county, and plaintiff, after several unsuccessful attempts, ultimately obtained a variance allowing it to lease the premises to another entity.

Plaintiff commenced this action and filed an amended verified complaint alleging, as relevant to this appeal, various claims against the City, the Board and Gilchrist (hereinafter collectively referred to as the city defendants), for tortious interference with its contract, as well as violations of plaintiff's constitutional rights, illegal spot zoning, and diminution in its property value. Supreme Court granted the city defendants' motion for summary judgment dismissing the complaint against them. Plaintiff reportedly settled all claims—including breach of contract, fraud and tortious interference—against defendants Starfire, Sherwood, Brunswick Research and Bradley, which are not before us.

On plaintiff's appeal, we affirm Supreme Court's award of summary judgment to the city defendants largely for the reasons stated in the court's written decision. With regard to plaintiff's claim of tortious interference against the City and Gilchrist, under settled law, this cause of action sounds in tort (*see Alvord & Swift v Muller Constr. Co.*, 46 NY2d 276, 281 [1978]. As against the City, this claim is subject to notice of claim requirements (*see* General Municipal Law § 50-e [1] [a]; § 50-i [1]; *see also Brown v City of New York*, 95 NY2d 389, 392-393 [2000]). Given plaintiff's failure to file a notice of claim (or to request permission to file a late notice), plaintiff is precluded from recovery against the City for this cause of action (*see Smith v Town of Long Lake*, 40 AD3d 1381, 1384 [2007]; *Hallett v City of Ithaca*, 8 AD3d 870, 871 [2004], *lv denied* 3 NY3d 608 [2004]).

Plaintiff's tortious interference claim against Gilchrist was properly dismissed because, even viewing the evidence most favorably to plaintiff, the nonmoving party, and giving him the benefit of every favorable inference (*see Gadani v Dormitory Auth. of State of N.Y.*, 43 AD3d 1218, 1219 [2007]), there is no reasonable view of the evidence that Gilchrist intentionally and unjustifiably—as opposed to merely negligently—procured the breach of the plaintiff-Starfire lease (*see Lama Holding Co. v Smith Barney*, 88 NY2d 413, 424-425 [1996]; *Harris v Town of Fort Ann*, 35 AD3d 928, 929 [2006]; *Bradbury v Cope-Schwarz*, 20 AD3d 657, 659-660 [2005]), i.e., that Gilchrist's conduct was "solely malicious" (*Rosario-Suarz v Wormuth Bros. Foundry*,

233 AD2d 575, 577 [1996] [internal quotation marks omitted]; *see Williams Oil Co. v Randy Luce E-Z Mart One*, 302 AD2d 736, 738-739 [2003]; *see also Murray v SYSCO Corp.*, 273 AD2d 760, 761-762 [2000]). Further, the proof could not support a finding that "the contract would not have been breached but for [Gilchrist's] conduct" (*Lana & Samer v Goldfine*, 7 AD3d 300, 301 [2004]; *see Northeast Wine Dev., LLC v Service-Universal Distribs., Inc.*, 23 AD3d 890, 893 [2005], *affd* 7 NY3d 871 [2006]). Plaintiff failed to offer proof that Gilchrist's conduct was not in furtherance of his official duties and not motivated by genuine municipal/public health and safety concerns (regardless of their merit), or was "motivated by malice, personal gain or a desire to injure plaintiff" in any respect or to unjustifiably procure Starfire's breach of its contract with plaintiff (*Rosario-Suarz v Wormuth Bros. Foundry*, 233 AD2d at 577). Also, the record clearly reflects that Bradley and Sherwood had determined that the site was not suitable *prior to* the arranged meeting with Gilchrist, and plaintiff did not submit proof capable of establishing that "but for" Gilchrist's subsequent action, Starfire would not have breached its contract with plaintiff. Thus, the tortious interference cause of action was correctly dismissed as against the City and Gilchrist.

Next, we agree with Supreme Court's conclusion that plaintiff's sixth cause of action against the City—for diminution in property value—to the extent it is even cognizable—"clearly sounds in tort, as it alleges a breach of a duty of care. It thus falls squarely within the ambit of General Municipal Law § 50-i. The lack of a notice of claim is therefore fatal to plaintiff's case." Further, Gilchrist's prospective, discretionary determination as building inspector that no building permit would be issued if requested, even if erroneous, is entitled to immunity (*see Emmerling v Town of Richmond*, 13 AD3d 1150, 1151 [2004], citing *City of New York v 17 Vista Assoc.*, 84 NY2d 299, 307 [1994]; *see also 154 E. Park Ave. Corp. v City of Long Beach*, 52 NY2d 991, 993 [1981], *cert denied* 454 US 858 [1981]; *Matter of Massa v City of Kingston*, 235 AD2d 947, 950 [1997], *lv dismissed and denied* 89 NY2d 1065 [1997]). With regard to the Board, plaintiff makes no allegations against it which could support this cause of action. Thus, the court properly granted summary judgment dismissing the sixth claim in its entirety.

Plaintiff is correct that compliance with notice of claim requirements of General Municipal Law §§ 50-e and 50-i is not necessary to recover for municipal actions that allegedly violated his federal civil and constitutional rights under 42 USC § 1983 (*see Felder v Casey*, 487 US 131, 138-141 [1988]; *Rapoli v Vil-*

*lage of Red Hook*, 41 AD3d 456, 457 [2007]; *see also Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 626-627 [2004]). Also, exhaustion of administrative remedies is not a predicate to an action under section 1983 (*see 423 S. Salina St. v City of Syracuse*, 68 NY2d 474, 485 [1986], *appeal dismissed and cert denied* 481 US 1008 [1987]; *STS Mgt. Dev. v New York State Dept. of Taxation & Fin.*, 237 AD2d 510, 510 [1997]). Thus, plaintiff's constitutional claims premised upon section 1983 as asserted in his second and seventh causes of action should not have been dismissed on either of these grounds.

Nonetheless, the city defendants were properly awarded summary judgment dismissing plaintiff's second and seventh claims. To be sure, 42 USC § 1983, in the land use context, protects against municipal actions, such as plaintiff alleges, that violate procedural and substantive due process, takings without just compensation and equal protection rights (*see Bower Assoc. v Town of Pleasant Val.*, 2 NY3d at 626; *Town of Orangetown v Magee*, 88 NY2d 41, 49 [1996]). However, plaintiff's civil rights claims are not justiciable given that, as plaintiff concedes, no application for a permit was submitted or pending and, thus, it cannot be said that a "final decision" was rendered by the city defendants which is ripe for judicial review (*Town of Orangetown v Magee*, 88 NY2d at 50-52; *see Matter of Essex County v Zagata*, 91 NY2d 447, 453 [1998]). Further, dismissal is required because plaintiff failed to plead or prove the existence of an official policy or custom, a precondition to a section 1983 action (*see Moore v Melesky*, 14 AD3d 757, 760 [2005]; *Ellsworth v City of Gloversville*, 269 AD2d 654, 657 [2000]; *see also Monell v New York City Dept. of Social Servs.*, 436 US 658, 690-691 [1978]).

Plaintiff's fifth claim for illegal "spot zoning"—if even a cause of action in a plenary action—is not premised upon constitutional violations or 42 USC § 1983. Therefore, as against the City, it is dismissible based upon plaintiff's failure to satisfy the notice of claim and exhaustion of administrative remedies requirements. Moreover, plaintiff's allegations are that the city defendants' actions were *detrimental* to him, a property owner who obtained a use variance, whereas spot zoning is, by definition, "the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area *for the benefit of the owner* . . . to the detriment of other owners" (*Boyles v Town Bd. of Town of Bethlehem*, 278 AD2d 688, 690 [2000] [emphasis added; internal quotation marks and citations omitted]; *see Matter of Yellow Lantern Kampground v Town of Cortlandville*, 279 AD2d 6, 9 [2000]). Indeed, on these facts, plaintiff is not the victim of spot zoning. Thus, plaintiff's

fifth claim against the city defendants was also properly dismissed.

Plaintiff's remaining arguments have been considered and found to be without merit.

Mercure, J.P., Peters, Carpinello and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.