*Conte v. Emmons*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2017

ARGUED: MARCH 26, 2018
DECIDED: JULY 10, 2018

No. 17-869-cv

ANTHONY CONTE,
*Plaintiff-Appellee,*

*v.*

BOB EMMONS, Individually and as Assistant District Attorney of Nassau County, New York, WILLIAM WALLACE, Individually and as Assistant District Attorney of Nassau County, New York, MIKE FALZARNO, Individually and as Special Investigator for the Office of the District Attorney of Nassau County, New York,
*Defendants-Appellants,*

Larry Guerra, City of New York, Rhoda Zwicker, Individually and as a Clerk in the Nassau County District Attorney's Office, Nassau County, New York, Nassau County District Attorney's Office, Katherine Rice, Individually and as District Attorney of Nassau County, New York, Christina Sardo, Individually and as Assistant District Attorney of Nassau County, New York, Nassau County, New York, Denis E. Dillon, Individually and as Former District Attorney of Nassau County, New York, Lisa Bland, Individually and as Attorney for the Police Department of the City of New York, Tefta Shaska, Individually and as a Detective for the Police Department of the City of New York, New York City Police Department, Robert

Vinal, Individually and as Deputy Commissioner of the Police Department of the City of New York, John and Jane Does, 1-20, Unknown Individuals and Employees of the Nassau County District Attorney's Office, Phillip Wasilausky, Individually and as Assistant District Attorney of Nassau County, New York,

*Defendants.*

————

Appeal from the United States District Court
for the Eastern District of New York.
No. 06-cv-04746 – Joseph F. Bianco, *Judge.*

————

Before: WALKER AND POOLER, *Circuit Judges*, COTE, *District Judge.**

————

Robert Emmons and William Wallace, prosecutors in the Nassau County District Attorney's Office, and Michael Falzarno, an investigator in the Office, appeal from the denial of their post-trial motion for judgment as a matter of law, and the corresponding entry of judgment following a jury verdict in favor of Plaintiff Anthony Conte, on Conte's claims against them for tortious interference with contract under New York law. Because we conclude that there was insufficient evidence for a reasonable juror to have found at least two elements of Conte's claims—intent and causation—we REVERSE.

Judge POOLER dissents in a separate opinion.

———

* Judge Denise Cote, of the United States District Court for the Southern District of New York, sitting by designation.

———

ELIZA MAE SCHEIBEL, Wilson Elser Moskowitz Edelman & Dicker LLP (Peter Meisels, *on the brief*), White Plains, NY, *for Defendants-Appellants*.

MICHAEL H. ZHU, New York, NY, *for Plaintiff-Appellee.*

———

JOHN M. WALKER, JR., *Circuit Judge*:

Robert Emmons and William Wallace, prosecutors in the Nassau County District Attorney's Office, and Michael Falzarno, an investigator in the office, appeal from the denial of their post-trial motion for judgment as a matter of law, and the corresponding entry of judgment following a jury verdict in favor of Plaintiff Anthony Conte, on Conte's claims against them for tortious interference with contract under New York law. Because we conclude that there was insufficient evidence for a reasonable juror to have found at least two elements of Conte's claims—intent and causation—we reverse.

Conte alleged in relevant part that appellants tortiously interfered with his contracts when appellants investigated the activities of I Media, a company Conte founded to produce and distribute *TV Time*, a television magazine. The investigation focused principally on Conte's possible defrauding of "route distributors," individuals who paid I Media upfront for the exclusive right to distribute *TV Time* in a given area, and were to receive in return a sum

for each magazine they delivered. To state it briefly, I Media faced serious difficulties in its early stages, and certain route distributors— who had paid upfront for their routes but had not received any magazines to distribute—became suspicious. Two distributors made complaints to the District Attorney's Office, which assigned the investigation to appellants at the Office's Criminal Bureau. Ultimately, nearly fifty individuals reported their suspicions to the District Attorney's Office, which assigned the investigation to appellants at the Office's Criminal Frauds Bureau. Appellants investigated the complaints, which included the issuance of grand jury document subpoenas and significant inquiries to route distributors, printers, and potential advertisers. No charges were ultimately filed, and, when I Media subsequently failed, Conte sued appellants and others for, *inter alia*, tortious interference with contract.

Following the close of evidence at a jury trial, appellants moved pursuant to Fed. R. Civ. P. 50(a) for judgment as a matter of law. The district court denied the motion and submitted the claims to the jury which ultimately found in favor of Conte on his tortious interference with contract claims against appellants and subsequently awarded Conte $1,381,500, which included $678,000 in punitive damages.[1]

---

[1] Following thorough rulings at the motion to dismiss stage, 2008 WL 905879 (E.D.N.Y. Mar. 31, 2008), and the summary judgment stage, 2010 WL 3924677 (E.D.N.Y. Sept. 30, 2010), trial was narrowed to the following

Appellants renewed their motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), and, following developments not relevant here, *see Conte v. County of Nassau*, 596 F. App'x 1 (2d Cir. 2014); *Conte v. Emmons*, 647 F. App'x 13 (2d Cir. 2016), the district court denied the motion and directed entry of judgment in favor of Conte on the relevant claims. This appeal followed.

## DISCUSSION

To warrant post-verdict judgment as a matter of law, the movant must show that the evidence, when viewed most favorably to the non-movant, was insufficient to permit a reasonable juror to have found in the non-movant's favor. *See S.E.C. v. Warde*, 151 F.3d 42, 46 (2d Cir. 1998). The standard is a high one, met only in "rare

claims: (i) unlawful arrest under New York law and 42 U.S.C. § 1983 against Assistant District Attorney Philip Wasilausky; (ii) abuse of process under New York law and § 1983 against appellants and Wasilausky; (iii) a *Monell* claim against Nassau County; and (iv) tortious interference with contract under New York law against appellants and Wasilausky. In resolving defendants' motion for judgment as a matter of law under Fed. R. Civ. P. 50(a), the district court dismissed the *Monell* claims against Nassau County but submitted the remaining claims to the jury. As discussed, the jury found against appellants on Conte's tortious interference with contract claims, but it ruled in their favor on Conte's claims against them for abuse of process. The jury separately found Wasilausky liable on Conte's unlawful arrest claims, but not on Conte's claims for abuse of process and tortious interference with contract. The district court granted Wasilausky judgment as a matter of law on Conte's unlawful arrest claims in its first post-trial opinion. *See Conte v. County of Nassau*, 2013 WL 3878738, at *18 (E.D.N.Y. July 26, 2013). We affirmed. *See Conte v. County of Nassau*, 596 F. App'x 1, 3 (2d Cir. 2014).

occasions." *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1536 (2d Cir. 1992). The movant, generally, must be able to show a "complete absence of evidence supporting the verdict [such] that the jury's findings could only have been the result of sheer surmise and conjecture." *Luciano v. Olsten Corp.*, 110 F.3d 210, 214 (2d Cir. 1997) (internal quotation marks omitted).[2] For the reasons that follow, appellants met that strict burden here.

The unchallenged jury instructions correctly listed the elements of a tortious interference with contract claim under New York law: (i) the existence of a contract; (ii) defendants' knowledge of that contract; (iii) defendants' intentional inducement of a breach of that contract; (iv) a breach; (v) but for the defendants' actions, that contract would not have been breached; and (vi) damages. App'x 611. After

---

[2] Conte argues that appellants relied on contentions in their renewed Rule 50(b) motion that they did not raise in their initial pre-verdict Rule 50(a) motion. Generally, this would require appellants to make an additional showing to obtain their requested relief, specifically, that entry of judgment as a matter of law "is required in order to prevent manifest injustice." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998). But, on appeal, Conte has not responded to appellants' argument that he may not challenge the insufficiencies in appellants' Rule 50(a) motion because he did not bring those issues to the attention of the district court in his opposition to appellants' Rule 50(b) motion. Conte's counsel acknowledged the point at oral argument. Contrary to our dissenting colleague's recollection, *see* dissenting op. at 4, 7 n.3, Conte's counsel conceded in no uncertain terms that we are to review for sufficiency of the evidence under the general standard of review for judgments as a matter of law that is identified in the text above. Oral Arg. Tr. 9:13–10:08.

a careful review of the trial record, we conclude that appellants are entitled to judgment as a matter of law because no reasonable juror could have properly inferred from the evidence that at least two elements were satisfied:  intent and causation.

*Intent*.  The jury was properly instructed that appellants could be liable for tortious interference with contract only if they acted with the "purpose of inducing [a] breach of contract." App'x 611.  *See, e.g.*, *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp.*, 87 N.Y.2d 614, 621 (1996). In *NBT Bancorp*, the Court of Appeals noted that the requirement of "an existing, enforceable contract" is what distinguishes a claim for tortious interference with contract from a claim for tortious interference with business relations, as to which interference with prospective contracts will suffice, *id.*, a separate tort claim that Conte did not bring.  It is clear that New York law emphasizes the requirement that a tortious interference with contract claimant establish that the defendant purposefully intended to cause a contract party to breach a particular contract.  *Id.* at 620 ("Ever since tortious interference with contractual relations made its first cautious appearance in the New York Reports . . . our Court has repeatedly linked availability of the remedy with a breach of contract.").  As stated in *NBT Bancorp*, although the contract-based claim carries a lesser culpability requirement than the more general business-relations claim, the contract-based claim is strictly "defined by the

nature of the plaintiff's enforceable legal rights." *Id.* at 621 (citing *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 193 (1980)); *see also Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189–90 (2004).

Here, there was no evidence presented to permit a reasonable inference that appellants met the standard as set forth by the above authorities. To begin, there was no evidence that appellants had any personal interest in the breach of any contracts that Conte may have had with route distributors, printers, or advertisers. *Rodrigues v. City of New York*, 193 A.D.2d 79 (1st Dep't 1993) is instructive. There, the First Department allowed an investigatory subject's tortious interference with contract claim against prosecutors to proceed past the pleading stage, but only on allegations that the prosecutors "sabotage[d]" plaintiffs' contracts "in order to extort bribes from plaintiffs." *Id.* at 88 (internal quotation marks omitted). We are far afield from *Rodrigues*, which is the only instance we know of in which a court recognized with approval a New York law tortious interference with contract claim against prosecutors (or their staff) for their conduct in investigating allegations of criminal activity.

Conte's strongest evidence on intent (viewed in his favor) was that one of the appellants, Investigator Falzarno, had a personal animus towards Conte, which manifested itself in an aggressive and harmful handshake on delivery of a document subpoena, stopping a route distributor on the street to tell him that Conte was a "fraud[]"

and "scam artist" and threatening that he could be arrested if he told Conte about that conversation, and a comment reflecting Falzarno's intent to "get" Conte. Conte also relies on the fact that Assistant District Attorney Wallace contacted certain of Conte's counterparties informing them that Conte was under investigation for fraud, and that the term "Ponzi scheme" may have come up in a conversation Wallace had with an attorney. There was virtually no evidence pertaining to Assistant District Attorney Emmons' state of mind.

For the jury to have inferred that this investigative conduct evinced an ulterior purpose outside of appellants' law enforcement goals could only have been "sheer surmise and conjecture." *Warren v. Pataki*, 823 F.3d 125, 139 (2d Cir. 2016) (quoting *S.E.C. v. Ginder*, 752 F.3d 569, 574 (2d Cir. 2014)). Without evidence to the contrary, *see generally Rodrigues*, 193 A.D.2d at 88, these actions cannot reasonably be interpreted as anything but those of public servants pursuing aggressively, and perhaps overly so, their law enforcement mandate. At best, the evidence showed that appellants became passionately invested in effectuating that mandate, but that does not allow for the inference that their intent went beyond their lawful charge. Rather, the record makes clear that any effect the investigation had on the destruction of Conte's contracts was simply incidental to appellants' intent to get to the bottom of widely reported allegations of fraudulent conduct and, moreover, that appellants never targeted

particular contracts. And New York law, for good reason, does not allow tortious interference with contract claims to "rest on conduct that is incidental to some other lawful purpose." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 589 (2d Cir. 2005) (per curiam) (internal quotation marks omitted); *see also Montano v. City of Watervliet*, 47 A.D.3d 1106, 1110 (3d Dep't 2008) (dismissing claim where "Plaintiff failed to offer proof that [an official's] conduct was not in furtherance of his official duties and not motivated by genuine municipal/public health and safety concerns").

In our view, it would be to the detriment of law enforcement to accept the jury's inferential finding of a purposeful intent on this bare record. It would invite suits against prosecutors (and their staff) any time a plausible allegation that the subject of an investigation lost business as the result of a reasonably triggered investigation is coupled with *some* indication that the investigators were somewhat overzealous in going after the subject. The jury's intent finding that the appellants purposefully targeted particular contracts is wholly without support.

*Causation*. The jury was also properly instructed that for Conte to recover, he must have shown that "but for the defendants' actions, the third party would not have breached." App'x 611. *See, e.g., Cantor Fitzgerald Assocs., L.P. v. Tradition N. Am., Inc.*, 299 A.D.2d 204, 204 (1st Dep't 2002) ("An essential element of such a claim is that

the breach of contract would not have occurred but for the activities of the defendant."). Conte failed to establish this element as well. Our review of the trial record unearths no admissible evidence allowing for a reasonable inference that any of Conte's contracting counterparties stopped performing under a contract because of anything appellants did or said.

Conte's theory of causation as to his tortious interference with contract claims was that his contracting counterparties breached their agreements with him as a result of appellants' investigative conduct. At trial, Conte called only one route distributor, with whom he was purportedly under contract, that interacted with any of the appellants. The distributor, Paul Hoppe, testified that Falzarno threatened him and told him and others that Conte was a fraud. But Hoppe's testimony was unequivocal that his "conversation with [] Falzarno had no bearing, whatsoever, on [his] continued business relationship with I Media," and that he stopped working with Conte simply because "[t]he product wasn't available." App'x 141. Others consistently testified similarly about I Media's unsuccessful relationships with printers and potential advertisers. *See* App'x 456, 486, 540–41. No witness remotely testified that they stopped performing under a contract with Conte because of the statements or actions of *appellants*.

Notably, in summation, Conte specifically listed thirty-one non-testifying individuals and entities whose contracts were purportedly interfered with. App'x 582–83. But because not one of them testified, the record is silent as to whether, and, as importantly, why, they stopped performing under their contracts with Conte. Conte acknowledged this deficiency, conceding that "people are reluctant to speak up and testify about what happened in this case." App'x 581. Aware of his lack of direct evidence, Conte asked the jury to instead rely on "circumstantial evidence," "and the logical inferences that common sense should lead you to draw." App'x 581. But to conclude with no direct evidence that third parties breached their contracts with Conte due to the acts of appellants—rather than for business reasons or because of word spreading from the disgruntled individuals with whom Conte battled in the early stages of I Media—was not a permissible inference, but an improper speculation.

In short, there was no evidence that anyone stopped performing under a specific contract because of anything said or done by appellants. And, to the extent the jurors relied on Conte's testimony about what Conte's contracting counterparties told him were the reasons for their breach, they relied improperly on hearsay testimony.

In sum, there was insufficient evidence to support the requisite inferential findings of intent and causation. "[T]he jury's findings could only have been the result of sheer surmise and conjecture." *Luciano*, 110 F.3d at 214.  Although we rarely exercise our authority to overturn a jury's verdict, it is what the law requires in this case.[3]

**CONCLUSION**

We REVERSE the judgment of the district court and REMAND with directions to enter judgment for appellants.

---

[3] Appellants argue in the alternative that the jury's verdicts on the tortious interference with contract claims must be overturned because appellants are absolutely and qualifiedly immune from suit under New York law.  Because we conclude that the evidence was insufficient to support those claims on their merits, we need not reach the question of immunity.

POOLER, *Circuit Judge*:

In this day and age, it is not a common occurrence for a pro se plaintiff to even present his case to the jury, let alone to convince a jury to return a verdict in his favor, let alone to win that verdict against members of a district attorney's office. But Anthony Conte did all of this. Appellants now attempt to undo that remarkable result by alleging deficiencies in his proof that they failed to point to when Conte still had the opportunity to present more evidence. The district court, having experienced the trial firsthand, concluded that the shortcomings in Conte's proof were not egregious enough to merit overturning a jury verdict. My colleagues unwisely second guess that evaluation, declining even to grant Conte a chance to amend his evidence at a new trial. Because I think the jury's verdict has sufficient grounding in the evidence to make it an inappropriate use of our discretion to overturn it, I respectfully dissent.

**I.    Forfeiture and Standard of Review**

Unlike my colleagues (but like the district court), I would find that Appellants forfeited their right to raise the arguments in front of us by failing to raise them in their pre-verdict Rule 50(a) motion. Thus, I would only overturn the jury's finding of tortious interference if necessary to correct a manifest

1

injustice. *See Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012) ("As to any issue on which proper Rule 50 motions were not made, JMOL may not properly be granted by the district court, or upheld on appeal, or ordered by the appellate court unless that action is required in order to prevent manifest injustice.").

As the official comments to the Federal Rules put it: "Rule 50(b) does not authorize a party to challenge the sufficiency of the evidence for the first time after the verdict. The only thing the verdict loser can do is *renew* a preverdict motion." Fed. R. Civ. P. 50, commentary. "Because the Rule 50(b) motion is only a renewal of the preverdict [Rule 50(a)] motion, it can be granted only on grounds advanced in the preverdict [Rule 50(a)] motion." *Lore*, 670 F.3d at 153. This requirement is meant to "give the [non-moving] party an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury" when he still has a chance to do so. *Galdieri-Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 286 (2d Cir. 1998); *see also Weisgram v. Marley Co.*, 528 U.S. 440, 454 (2000) (discussing the importance of the "notice, before the close of evidence, of the alleged evidentiary deficiency"). To prevent a party seeking judgment as a matter of law from "lur[ing] his opponent into failing to present evidence that would cure the asserted defect," *Fabri v. United*

2

*Technologies Int'l, Inc.*, 387 F.3d 109, 116 (2d Cir. 2004), the requirement that an argument raised on a Rule 50(b) motion must have specifically been raised in a Rule 50(a) motion should not be overlooked as "a mere technicality." *Cruz v. IBEW*, 34 F.3d 1148, 1155 (2d Cir. 1994).

The district court applied this reasoning in holding that Appellants forfeited their right to raise these arguments in their post-verdict motion by failing to raise them in their pre-verdict motion.[1] *Conte v. County of Nassau*, 06-cv-

---

[1] The district court referred to these arguments as "waived"—following the terminology used in our cases—but the Supreme Court has repeatedly emphasized that "[a]lthough jurists often use the words interchangeably, forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right." *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004) (internal punctuation omitted); *see also Hamer v. Neighborhood Housing Services of Chicago,* 138 S. Ct. 13, 17 n.1 (2017); *Stern v. Marshall*, 564 U.S. 462, 482 (2011); *United States v. Olano*, 507 U.S. 725, 733 (1993); *Freytag v. Commissioner*, 501 U.S. 868, 894 n.2 (1991) (Scalia, J., concurring). In particular, the Court has discussed failure to file a Rule 50 motion in terms of forfeiture rather than waiver. *See Ortiz v. Jordan*, 562 U.S. 180, 189, n.6 (2011); *Unitherm Food Systems, Inc. v. Swift Eckrich, Inc.*, 546 U.S. 394, 404-05 (2006). This terminological distinction does not seem to make a substantive difference in civil cases. In the criminal context, waived issues are generally unreviewable and forfeited issues are reviewed for plain error under Rule 52(b) of the Federal Rules of Criminal Procedure. *See United States v. Parse*, 789 F.3d 83, 112-13 (2d Cir. 2015). In civil cases, 28 U.S.C. § 2106 allows "any…court of appellate jurisdiction" to "remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances," which would seem to permit "[a]rguments raised for the first time on appeal," whether waived or forfeited, to "be entertained…if their consideration would prevent manifest injustice." *Unitherm*, 546 U.S. at 408

3

4746, 2017 WL 837691, *6-7 (E.D.N.Y. Mar. 3, 2017) ("*Conte V*") Appellants now argue that the district court erred in doing so because Conte forfeited his right to benefit from their forfeiture by failing to object to it at the post-verdict stage. Conte did not respond to that argument on appeal. The majority concludes that Conte's inattention, in addition to his inability to respond to this Court's questions about it at oral argument, means we should ignore the district court's finding that Appellants forfeited their arguments. Slip op. at 5 n.2. I disagree.

Our discretionary practice of declining to consider arguments insufficiently presented in the briefs is a way of giving force to Rule 28's requirements for what appellate briefs must contain. *See Niagara Mowhawk Power Corp. v. Hudson River-Black River Regulating District*, 673 F.3d 84, 107 (2d Cir. 2012); *Tolbert v. Queens College*, 242 F.3d 58, 75-76 (2d Cir. 2001); Fed. R. App. P.

---

(Stevens, J., dissenting). However, at least some forfeited issues are unreviewable. *See Unitherm*, 546 U.S. at 407. A number of decisions in our Circuit have applied plain error review to forfeited issues in civil cases, though these decisions generally refer to the Supreme Court decision in *Olano*, which was a criminal case, and I know of no other authority for applying plain error review to a civil matter. *See Peterson v. Islamic Republic of Iran*, 876 F.3d 63, 78 (2d Cir. 2017); *Kogut v. County of Nassau*, 789 F.3d 36, 45 (2d Cir. 2015); *Girden v. Sandals Int'l*, 262 F.3d 195, 206 (2d Cir. 2001); *Simms v. Village of Albion*, 115 F.3d 1098, 1109 (2d Cir. 1997). We need not sort through these standards here, since, as discussed above the line, it is well established in this Circuit that issues not raised in a Rule 50(a) motion are reviewed for manifest injustice.

4

28(a) (appellants' briefs), 28(b) (appellees' briefs). Generally we exercise this discretion when an *appellant* has failed to properly present an issue with the district court's judgment for our review, since it is an appellant's responsibility to do so in the first instance. *See, e.g.*, *Niagara Mowhawk*, 673 F.3d at 107; *McCarthy v. S.E.C.*, 406 F.3d 179, 186 (2d Cir. 2005); *United States v. Barnes*, 158 F.3d 662, 672-75 (2d Cir. 1998); Fed. R. App. P. 28(a)(5). An appellee does not need to present her own statement of the issues "unless the appellee is dissatisfied with the appellant's statement" or unless she is a cross-appellant. Fed. R. App. P. 28(b)(2); *see also Frank*, 78 F.3d at 832-33 (discussing the parallel obligations of an appellant and cross-appellant). She does, however, have to include her "contentions and the reasons for them" in more than conclusory fashion. Fed. R. App. P. 28(b), 28(a)(8)(A). We have occasionally treated an appellee's failure to provide a counterargument as a concession on that issue. *See Tolbert*, 242 F.3d at 75; *Norton v. Sam's Club*, 145 F.3d 113, 117 (2d Cir. 1998).[2]

However, there is no default judgment on appeal. When an appellant has properly raised an issue and an appellee has failed to respond to the appellant's

---

[2] In *Norton*, we found that "an appellee ha[d] not properly preserved *his* right to object to the appellant's attempt to claim insufficiency of the evidence." 145 F.3d at 117.

arguments on that issue, we should not rule in favor of appellant merely because she said something rather than nothing. Declining to consider an insufficiently raised issue allows us to avoid distorting the law by making a decision without adequate briefing. Exercising our discretion to rule in favor of the only party to present arguments on an issue risks the opposite: distorting the law because of inadequate briefing. Moreover, when an appellee fails to respond to an appellant's arguments, we still have the district court's reasoning on the issue that we may rely on. *See Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) ("[W]e may affirm on any ground supported by the record.") (internal quotation marks omitted). Thus, our discretion to rule in favor of appellants because appellees have failed to respond should be exercised more sparingly and only once we have taken account of the merits, including the district court's reasoning.

This is a case where we should decline to exercise that discretion. Appellants are incorrect in their contention that Conte's failure to object at the post-verdict stage to their failure to raise these insufficiency arguments at the

pre-verdict stage amounted to a forfeiture of forfeiture.[3] It is true that the district court could have exercised its discretion to ignore Appellants' pre-verdict forfeiture in light of Conte's post-verdict failure to object. *See Gronowski v. Spencer*, 424 F.3d 285, 297 (2d Cir. 2005); *Gibeau v. Nellis*, 18 F.3d 107, 109 (2d Cir. 1994). But it did not.[4] When a district court has considered an issue, even sua sponte, that issue has not been forfeited. The point of forfeiture doctrine is to allow a court to exercise discretion to "refuse to consider a[n]…objection even though a like objection had previously been sustained in a case in which it was properly taken." *Yakus v. United States*, 321 U.S. 414, 444 (1944). Exercising such discretion prevents a litigant from "'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Stern*, 564 U.S. at 482 (quoting *Puckett v. United States*, 556 U.S. 129, 134 (2009)); *see also Singleton v. Wulff*, 428 U.S. 106, 120-21 (1976). It also allows appellate courts to avoid addressing a complicated issue for the first time

---

[3] I also do not think we should treat Conte's attorney's failure to withstand questioning at oral argument as a concession.

[4] Although it did not have Conte's objection, the district court did have the benefit of our previous summary order in this matter, which explicitly mentioned the fact that Appellants "did not specifically articulate these grounds for reversal in their Rule 50(a) motion" and the forfeiture that results. *Conte v. County of Nassau*, 596 F. App'x 1, 6 (2d Cir. 2014) ("*Conte II*").

on appeal without the benefit of a district court's consideration of the question in the first instance. These considerations do not apply when the district court *has* considered the question, whether it did so on its own initiative or in response to a party's prompting. In other words, the district court's attention to the intricacies of Rule 50 was not error merely because Conte (proceeding pro se) was inattentive to them.

I would thus do as the district court did and review the verdict only for manifest injustice.

**II.    Intent**

As the majority rightly notes, overturning a jury verdict for insufficient evidence should only occur on the rarest of occasions, in which there is a "complete absence of evidence." Slip op. at 5 (quoting *Luciano v. Olsten Corp.*, 110 F.3d 210, 214 (2d Cir. 1997)). We should exercise our discretion to overturn a jury verdict even more cautiously if we do so on grounds not raised when the verdict winner still had an opportunity to supplement the record. This hesitancy is especially important when the verdict winner is a pro se litigant because individuals unfamiliar with the intricacies of our legal system stand to benefit the most from being put on notice as to any deficiencies of proof. Moreover, because

8

a directed verdict based on grounds not raised in a pre-verdict motion deprives the non-movant of the opportunity to cure the defects in her case before it goes to the jury, "if the party moving [under Rule 50(b)] has not moved for a directed verdict [under Rule 50(a)], and if the court is nevertheless satisfied that justice requires that the judgment be vacated for insufficiency of the evidence, the court should normally grant a new trial." *Baskin v. Hawley*, 807 F.2d 1120, 1134 (2d Cir. 1986).

Overturning a jury verdict without granting a new trial is all the more extraordinary when most of the relevant evidence is from live testimony. Such evidence is the hardest to evaluate from a proverbial cold record. We have only the transcript, not the hesitations, stutters, false starts, facial expressions, gestures, miens, intonations, pacing, and other unrecorded carriers of meaning. The jury took all of the latter into account in evaluating the credibility of witnesses and in coloring their understanding of the words uttered. "[W]e may not overturn the jury's own reasonable interpretations or its credibility determinations." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998). We should be even more hesitant when the district court judge who has presided over the trial—and thus has more than a cold record—upholds the jury verdict.

*See Unitherm*, 546 U.S. at 401 (emphasizing the importance of giving the district judge, "who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart," a first review of a jury verdict).

The trial transcript reveals facts that the jury could have used as a basis for its conclusion that Appellants' interference with Conte's and I Media's contracts was intentional and that it was not "motivated by genuine municipal/public health and safety concerns (regardless of their merit)." *Montano v. City of Watervliet*, 47 A.D.3d 1106, 1110 (3d Dep't 2008). The majority recognizes the evidence of Falzarano's antagonism towards Conte. Slip op. at 8. My colleagues also acknowledge that there was at least some evidence that could have supported an inference that Wallace used his position as an Assistant District Attorney to intentionally spread doubt about the legality and viability of Conte's business, but they improperly discount it, rather than credit it as the jury must have done. *Id.*

The district court discussed at some length the evidence pertaining to Wallace's contact with printers who worked with or considered working with Conte as well as Wallace's contact with a class action attorney who brought (then dropped) a case against Conte. *See Conte V*, 2017 WL 837691, at *15. Consistent

with the district court's conclusion, the jury could have discounted Wallace's self-serving testimony regarding these matters; it could have disbelieved the one printer who testified regarding his purported reasons for cutting off business with Conte; and it could have accepted Conte's version of the story. **[A461-62.]** It could have interpreted the September 8, 2005 email with the class action attorney as only a late entry in an ongoing correspondence in which Wallace egged on the attorney and discounted Wallace's protests to the contrary. **[A415-16.]**

I agree that Emmons presents the most difficult case, but the jury could have concluded that the coordinated efforts of his department reflected his influence. Wallace testified that it was Emmons that instructed him to contact Conte's printers, and Emmons testified that he did consult on the case. **[A406.]** The jury could have extrapolated that Emmons was more involved than he was representing and that Falzarano's and Wallace's behavior revealed their shared intent.[5]

---

[5] Appellants note that Wasilausky was not found liable for tortious interference, which they argue means that "the jury expressly rejected the argument that the letters [Wasilausky sent to route distributors soliciting complaints] constituted tortious interference." Appellants' Br. at 43. This is one reason the jury could have decided that Wasilausky was not liable, but there are others that are consistent with the conclusion that the letters amounted to intentional interference. For instance, the jury could have concluded that Wasilausky, without the requisite mental state, was just carrying out orders from Emmons,

The majority faults Conte for failing to conform his allegations to the model of *Rodrigues*, in which public officials' motives for interfering with contracts was the extortion of bribes. Slip op. at 7-8 (relying on *Rodrigues v. City of New York*, 193 A.D.2d 79 (1st Dep't 1993). But *Rodrigues* does not close the universe of impermissible ulterior motives just because it is the only reported case we can find in which prosecutors were found liable for intentional interference with contract. The jury here could have concluded that Appellants, frustrated that Conte's behavior did not technically violate any law, nevertheless decided to use their investigatory powers and their cloak of state authority to shut his business down.

I am sensitive to the majority's concern that intentional interference not lie for zealous, even overzealous, investigation into potential business crimes. And I acknowledge the thin evidence of intent. But more than a showing of thin evidence is required to find a jury verdict to be so manifestly unjust that it should be overturned regardless of the verdict winner's lack of opportunity to thicken his case before deliberations and without granting him a new trial in

---

who had the requisite mental state. We simply do not know based on the lack of specificity in the jury verdict.

12

which to do so. *See Kirsch*, 148 F.3d at 165 (A court cannot find manifest injustice "where, had Defendants properly raised the issue at trial, it may be that Plaintiffs would have been able to present additional evidence."). The jury considered the issues presented with some care, finding in favor of some of the defendants on some counts and in favor of Conte on others. Appellants apparently did not, failing even to raise basic statute of limitations arguments before the verdict was announced. *See Conte II*, 596 F. App'x at 6. Even if the record developed by this pro se plaintiff leaves some room for doubt, I do not think it was a manifest injustice that the jury found his version of the story more convincing. Upholding this verdict on a unique case does not alter the law in any way that will make future investigations more difficult. In short, the district court was correct to find that "had [Appellants] alerted [Conte] to the defects in proof they now identify, he may have been able to cure them." *Conte V*, 2017 WL 837691, at *19.

**III. Causation**

Turning to causation, my colleagues point out that Hoppe, the one route distributor to testify about being intimidated, also testified that this intimidation did not deter him from continuing to work with Conte. Slip op. at 11. True, but Hoppe also testified that he heard from other distributors that Falzarano had

13

contacted them.[6] **[A139.]** And it is uncontested that the Nassau County District Attorney's office sent letters to many route distributors and that many of these route distributors submitted complaints in response. The jury could have concluded that other route distributors had less fortitude than Hoppe.

Alternatively or complementarily, the jury could have distrusted the explanation given by Hubbard, the one printer to testify, for his company's failure to deal with Conte. **[A461-62.]** And the majority acknowledges that Wallace testified that he "may" have called Conte's business a "Ponzi scheme" when talking with Hubbard. Slip op. at 8. Thus, the jury could have inferred (and not just "surmise[d]," Slip op. at 12 (quoting *Luciano*, 110 F.3d at 214)) that Hubbard's company backed out of a contract with I Media after Wallace warned him away from Conte's business.

**IV.    Conclusion**

In sum, I do not think we have a compelling enough reason to replace this jury's conclusions with our own. I would affirm the district court's thoroughly

---

[6] That testimony may be hearsay, but it was not objected to at trial and Appellants raise no evidentiary objection in front of us. Moreover, had Conte been put on notice of the problem with that testimony, he may have been able to put on additional witnesses or otherwise cure his defect in proof.

considered determination that the jury verdict against Appellants was not manifestly unjust. Even if I were inclined to vacate the verdict, I would order a new trial to allow deficiencies of proof to be corrected before a jury. Appellants should not be able to get away with failing to properly defend a case just because they underestimated the pro se plaintiff who sued them.