19-3251-cv
*Edwards v. Quiros, et al.*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2020

ARGUED: NOVEMBER 17, 2020
DECIDED: JANUARY 27, 2021

No. 19-3251-cv

M.A. EDWARDS,
*Plaintiff-Appellant,*

*v.*

WARDEN QUIROS, in his individual and official capacity,
*Defendant-Appellee,*

COMMISSIONER ARNONE, COMPLEX WARDEN LAJOIE, DEPUTY
WARDEN POWERS, in their individual and official capacities, SZABAN,
*Defendants.*

————

Appeal from the United States District Court
for the District of Connecticut.

————

Before: WALKER, KATZMANN, and WESLEY, *Circuit Judges.*

————

Plaintiff M.A. Edwards, a Connecticut prisoner, brought this action under 42 U.S.C. § 1983, alleging that state correctional officials violated the Eighth Amendment's prohibition against cruel and unusual punishment by denying him a meaningful opportunity to exercise for six months. Specifically, Edwards alleged the denial occurred when prison officials required him to wear full restraints when exercising in the prison yard. After a jury returned a verdict for Edwards, the district court (Underhill, *J.*) granted Defendant Warden Angel Quiros's motion for judgment as a matter of law on the basis that Quiros's personal involvement was for too short a time to support an Eighth Amendment claim. We conclude that the evidence was sufficient to support the jury's findings that (1) Edwards was subjected to an Eighth Amendment violation, and (2) Quiros was liable for it. We also conclude that Quiros is not protected by qualified immunity. Accordingly, we **VACATE** the district court's entry of judgment as a matter of law and **REMAND** for further proceedings.

————

STEPHEN BERGSTEIN, Bergstein & Ullrich, LLP, New Paltz, NY, *for Plaintiff-Appellant*.

STEVEN M. BARRY, Assistant Attorney General, Connecticut Office of the Attorney General, Hartford, CT, *for Defendant-Appellee*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiff M.A. Edwards, a Connecticut prisoner, brought this action under 42 U.S.C. § 1983, alleging that state correctional officials violated the Eighth Amendment's prohibition against cruel and unusual punishment by denying him a meaningful opportunity to exercise for six months. Specifically, Edwards alleged the denial occurred when prison officials required him to wear full restraints when exercising in the prison yard. After a jury returned a verdict for Edwards, the district court (Underhill, *J.*) granted Defendant Warden Angel Quiros's motion for judgment as a matter of law on the basis that Quiros's personal involvement was for too short a time to support an Eighth Amendment claim. We conclude that the evidence was sufficient to support the jury's findings that (1) Edwards was subjected to an Eighth Amendment violation, and (2) Quiros was liable for it. We also conclude that Quiros is not protected by qualified immunity. Accordingly, we **VACATE** the district court's entry of judgment as a matter of law and **REMAND** for further proceedings.

## BACKGROUND

<u>Facts</u>

Plaintiff Edwards has been incarcerated in the Connecticut state prison system following his conviction for murder more than 20

years ago.  The instant case arose from Edwards's treatment as an inmate at Northern Correctional Institution (Northern) in Somers, Connecticut, a maximum-security facility where Defendant-Appellee Angel Quiros was the warden at all times relevant to this suit.

Edwards was transferred to Northern on September 21, 2010, after assaulting a correctional officer at his prior, lower-security facility.  Upon his arrival at Northern, Edwards was held in punitive segregation until mid-October, when he was transferred to administrative detention pending further review of his detention status.  On November 3, Edwards was placed into administrative segregation (AS) Phase I status.  The imprisonment conditions during his time in punitive segregation, administrative detention, and AS Phase I were the most restrictive at Northern.

AS Phase I inmates are normally placed in the East or West wing of Unit One at Northern.  Unit One is the most secure and restrictive of Northern's three housing units, and its recreation yards contain individual secured enclosures within the larger secured recreation enclosure.  The doors to these smaller enclosures are equipped with trap doors through which corrections officers can remove inmates' restraints once the inmate is secured inside, allowing the inmate freedom of movement while exercising.  The trap doors

make it possible for officers to remove the restraints while physically separated from the inmate by the enclosure itself.

At the time Edwards was placed in AS Phase I, however, Unit One was fully occupied. As a result, he was housed in "overflow" AS Phase I housing in Unit Three's East wing but kept under restrictions commensurate with those in Unit One. Every AS Phase I inmate assigned to overflow housing in Unit Three was supposed to be rotated back to Unit One after only one or two weeks. This was in part because Unit Three's recreation yard was not designed to accommodate AS Phase I inmates; it was equipped with neither individual recreation enclosures nor trap doors on the enclosure doors. Therefore, when AS Phase I overflow inmates such as Edwards were taken to the recreation yard in Unit Three, corrections officers did not remove the set of full restraints even after securing the inmates in the enclosed yard. These inmates spent their recreation time with their hands cuffed behind their backs, leg irons on their ankles, and a chain tether securing those two sets of restraints to one another, which severely restricted the inmates' freedom of movement. As an AS Phase I inmate in Unit Three, Edwards's only unrestrained exercise opportunity was in his 7-by-12-foot cell; although Edwards testified that he was able to perform push-ups and sit-ups while unrestrained in his cell, other forms of exercise were

impossible because furniture, including a bed, desk, chair, footlocker, sink, and toilet, occupied much of the space.

On March 3, 2011, Edwards submitted an inmate request form to his unit manager at Northern, complaining about being forced to exercise in full restraints for his permitted one hour of yard exercise. The unit manager denied the request, explaining that Edwards was kept in full restraints both because of the severity of his latest assault on a correctional officer and because, due to the lack of trap doors, there was no way for officers to safely remove the restraints from inmates in Unit Three's exercise enclosure. On March 8, Edwards submitted the same complaint on an inmate request form to Warden Quiros. In response, Quiros told Edwards to take the complaint up with his unit manager, apparently unaware that Edwards had already done so. On March 10, Edwards filed a formal grievance with Quiros on the same grounds. Quiros received the request on March 15 and ultimately denied it on April 11. In the interim, however, on March 24, Quiros transferred Edwards to AS Phase II status, whereupon he was no longer required to exercise in full restraints.

In the six months between Edwards's arrival at Northern in punitive segregation on September 21, 2010, and his eventual transfer out of AS Phase I on March 24, 2011, Edwards was never permitted to exercise outside his cell except under full restraints.

Procedural History

In 2011, Edwards commenced this civil rights action, *pro se*, under 42 U.S.C. § 1983 against several supervisory officials at the Connecticut Department of Corrections and Northern. The defendants moved for summary judgment on the ground that they were entitled to qualified immunity, and, in 2014, the district court granted that motion. Qualified immunity shields government officials from liability for civil damages as long as the officials' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[1] Because the district court found that prisoners do not have a clearly established right "to recreate free from restraints," it granted qualified immunity to the defendants.[2]

In 2015, on a prior appeal, we vacated the district court's grant of summary judgment based on qualified immunity. In doing so, we determined that the proper delineation of the right at issue is a "right to some meaningful opportunity to exercise[,] subject to a safety exception and adequate consideration of alternatives."[3] Because this

---

[1] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[2] *Edwards v. Arnone*, 613 F. App'x 44, 46 (2d Cir. 2015).

[3] *Id.*

right to meaningful exercise was clearly established,[4] and because there remained material factual disputes about the adequacy of the prison's safety justification, we held that the district court's qualified immunity finding was error.[5]

On remand, following the appointment of *pro bono* counsel for Edwards, the case proceeded to trial in 2018 against Warden Quiros and Deputy Warden Lauren Powers.[6]  After Edwards presented his evidence, both officials moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a).  After the close of all evidence, the jury returned a verdict in Edwards's favor against Quiros but not against Powers.  Quiros then renewed his motion for judgment as a matter of law under Rule 50(b).  The district court granted Quiros's motion on the ground that there was insufficient evidence of Quiros's personal involvement in the decision to require Edwards to exercise in full restraints.  It determined that the evidence supported Quiros's involvement only for the roughly two-week period between March 8, 2011, when Quiros received Edwards's inmate request form, and March 24, 2011, when Quiros transferred Edwards to AS Phase II

---

[4] *See Williams v. Greifinger*, 97 F.3d 699, 704 & n.5 (2d Cir. 1996).

[5] *Edwards*, 613 F. App'x at 47.

[6] Edwards voluntarily dismissed his claims against Commissioner Arnone and District Commissioner Lajoie prior to the presentation of evidence.

status. Because, in the district court's view, Quiros's involvement in this deprivation of meaningful exercise was too brief to sustain a violation of the Eighth Amendment, the district court held the evidence insufficient to support the jury's verdict and granted Quiros's Rule 50(b) motion. The district court denied his alternative motion for a new trial under Rule 59 as moot.

This appeal followed.

## DISCUSSION

The central issue on appeal is whether sufficient evidence supported the jury's determination that Quiros was personally involved in the decision to have Edwards exercise in full restraints for a long enough period to establish an Eighth Amendment violation. Separately, Quiros argues that the evidence did not support any violation of the Eighth Amendment, regardless of his personal involvement. Quiros also argues that he is entitled to qualified immunity.

### I.     Sufficient Evidence Supported the Jury's Verdict

We review *de novo* a district court's decision to set aside a jury verdict and grant judgment as a matter of law under Rule 50.[7] A jury

---

[7] *Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005).

verdict should only be set aside "where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him."[8]  In deciding a motion for judgment as a matter of law, a district court "may consider all the record evidence, but in doing so it 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'"[9]

Turning to the substance of the legal claim at issue, the Eighth Amendment proscribes the infliction of "cruel and unusual punishments."[10]  To prevail on an Eighth Amendment conditions-of-confinement claim against prison officials under 42 U.S.C. § 1983, a plaintiff must prove that "objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities,"[11] such as being denied "a

---

[8] *Id.* (internal quotation marks and alterations omitted).

[9] *Id.* at 247 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[10] U.S. Const. amend. VIII.

[11] *McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020) (internal quotation marks omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

meaningful opportunity for physical exercise."[12]  The plaintiff must also prove that "subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety."[13]  Deliberate indifference is more than negligence—it requires a showing that the prison official "kn[e]w of, and disregard[ed], an excessive risk to inmate health or safety" from the challenged condition of confinement.[14]

We first address the sufficiency of the evidence in support of the subjective component of Edwards's claim, which is Quiros's personal awareness of, and deliberate indifference to, the risk to Edwards's health.  Here we conclude that there was sufficient evidence for the jury to find that Quiros had the requisite state of mind for the entire six-month period during which Edwards was required to exercise in restraints when outside of his cell, not just the two weeks that the district court found.  The jury's verdict was not based on "sheer surmise and conjecture," but on abundant circumstantial evidence from which the jury reasonably inferred

---

[12] *Id.* at 120; *see also Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (recognizing that conditions of confinement may constitute an Eighth Amendment violation where they produce a "deprivation of a single, identifiable human need such as food, warmth, or exercise").

[13] *McCray*, 963 F.3d at 117 (internal quotation marks and alteration omitted); *see also Farmer*, 511 U.S. at 834.

[14] *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (per curiam).

Quiros's actual knowledge of Edwards's recreation status and the concomitant risk to Edwards's health from being required to exercise in restraints.

Quiros's own testimony provided a sufficient basis for the jury's conclusion that he knew Edwards was required to exercise in full restraints for the entire six months at issue.  Quiros testified about his knowledge of the policy requiring any inmates in punitive segregation or administration detention (as Edwards was between September 21 and November 3, 2010) to exercise either in full restraints or individual enclosures.  Quiros also testified that he had endorsed the prison's policy requiring AS Phase I inmates in overflow Unit Three housing (as Edwards was between November 3, 2010 and March 24, 2011) to similarly exercise in full restraints.  His testimony supported an inference that, if Quiros knew there were AS Phase I prisoners in Unit Three, then he knew they were required to exercise in restraints.

Quiros also testified that he monitored the AS Phase I inmates closely, that there were only three or four AS Phase I inmates housed in Unit Three during the time Edwards was there, and that he had access to surveillance footage of the unit recreation areas.  Thus, his testimony was sufficient to support the jury's inference that he would have noticed any AS Phase I inmate who stayed in Unit Three for

longer than usual, at least because only the AS Phase I inmates would be in full restraints on the surveillance footage of the Unit Three exercise yard. Bolstering that inference, after counsel at trial suggested to Quiros that he would not have had any way of knowing how long an AS Phase I inmate stayed in Unit Three, Quiros objected to counsel's characterization. He testified, "That is incorrect. I pay . . . attention to my job and my responsibility. I tour twice a week."[15]

In sum, Quiros presented himself to the jury as a hands-on warden who kept close tabs on the inmates on restrictive status under his purview. The jury was entitled to credit Quiros's testimony in those respects and infer that in fact he did know that Edwards was in Unit Three, exercising in full restraints, until his transfer to AS Phase II status. We therefore respectfully find that the district court erred by drawing inferences against the verdict and by discrediting Quiros's own testimony when it found that no evidence supported Quiros's knowledge of Edwards's recreation status prior to March 8, 2011, the date he received Edwards's inmate request form.

The jury was also entitled to conclude that Quiros was deliberately indifferent to the risk of harm to Edwards resulting from his being required to exercise in full restraints for six months, all of

---

[15] J. App. at 183.

which was spent in Unit Three East.  Quiros testified that AS Phase I

inmates should only be kept in Unit Three for "one or two weeks at

the most,"[16] and that "the overflow [placement] is a temporary basis,

which means that the offender will be in and out for—on a rotating

basis, anywhere from two—a week to two week[s].  Once [a Unit One]

bed became available, they would end up in 1 East and 1 West and

recreate without restraints."[17]   This testimony indicated that he

understood the importance of moving AS Phase I inmates to Unit One

when a bed became available so that they could exercise unrestrained.

Quiros's testimony about why he had rejected Edwards's inmate

request for the installation of trap doors in the Unit Three yard

enclosure, which would have permitted inmates to exercise

unshackled, also supported such an inference.  Quiros testified that

he "came to the conclusion that we were not going to put [in] trap

doors because it was just temporary housing,"[18] reinforcing Quiros's

understanding that requiring inmates to exercise in restraints was

acceptable only on a temporary basis.

Taken as a whole, Quiros's testimony provided sufficient

support for the jury's finding that Quiros understood the problem

---

[16] *Id.* at 182.

[17] *Id.* at 165.

[18] *Id.* at 181.

with prisoners exercising in full restraints for longer than the one-to-two-week duration of temporary housing. The inference that Quiros understood *why* that would be a problem—because deprivation of meaningful exercise poses a risk of serious health problems—was reasonable in light of his testimony and the fact that exercise is widely understood to be a basic human need. As we have previously recognized, and as is the case here, "[e]vidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk."[19] To be held liable, Quiros need only appreciate that the deprivation of meaningful exercise posed an excessive risk to Edwards's health. Quiros need not have known the specifics of that health risk with the level of detail a physician would understand.

Turning next to the objective component of Edwards's conditions-of-confinement claim, sufficient evidence supported the jury's verdict here as well. Quiros argues principally that both the availability of in-cell exercise and the prison's safety justification for restrained exercise independently foreclose an Eighth Amendment claim.[20] We disagree, and we find no independent basis for affirming

---

[19] *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted).

[20] Def.-Appellee Quiros's Br. at 39–41.

the entry of judgment as a matter of law in his favor based on the objective component.[21]

The availability of in-cell exercise does not establish as a matter of law that a prisoner had a meaningful opportunity to exercise. We have previously permitted Eighth Amendment opportunity-to-exercise claims to proceed where those claims exclusively concerned impediments to out-of-cell exercise, including when the alleged deprivation was shorter than the six months at issue here.[22]  In this case, a properly instructed jury found that the in-cell opportunity for exercise was not sufficient to provide Edwards with a meaningful opportunity to exercise.  The jury came to its verdict after hearing Edwards's testimony about the small size of his cell, the furniture and bathroom fixtures taking up space in the cell, and the limits to the extent he could exercise there.  The verdict was therefore not based on "sheer surmise and conjecture" and cannot be set aside on that ground.

---

[21] The district court's entry of judgment as a matter of law reached only the subjective component of the Eighth Amendment claim.

[22] *See McCray*, 963 F.3d at 117–18 (vacating dismissal of opportunity-to-exercise claim arising from a prison yard allegedly not being cleared of snow for four months); *Williams*, 97 F.3d at 701–02, 707–08 (reversing grant of qualified immunity for prison official where plaintiff was subject to policy preventing him from getting any out-of-cell exercise).

Moreover, we find completely unavailing Quiros's related contention that there can be no Eighth Amendment violation here because "the plaintiff was not deprived of the ability to attend outdoor recreation and to get fresh air and walk."[23] We have described the right at issue as that to "some opportunity to exercise,"[24] and we cannot determine as a matter of law that the jury erred in finding that Edwards's limited ability to shuffle around in full restraints while breathing fresh air constituted meaningful exercise.

Quiros also argues that the prison's safety justification was adequate, and that there can thus be no Eighth Amendment violation. However, the jury was entitled to disagree. The safety justification was undermined by testimony from Edwards, credited by the jury, that corrections officers would not always employ the most restrictive shackling method of full restraints when they were moving him out of his cell and around the facility. That testimony called into question the prison's safety justification for requiring Edwards to exercise in full restraints, notwithstanding his significant disciplinary record. Because corrections officers were not always so concerned about their safety as to employ the most restrictive shackling methods while transporting Edwards, a reasonable jury was entitled to doubt the

---

[23] Def.-Appellee Quiros's Br. at 46.

[24] *Williams*, 97 F.3d at 704.

prison's basis for leaving Edwards fully restrained in the yard enclosure. The jury did not act unreasonably by discrediting the prison's safety justification.

The jury similarly was entitled to reject the argument that defendants had adequately considered, but appropriately rejected, alternatives to full-restraint exercise. Specifically, the jury was entitled to discredit testimony from a corrections officer about how he had heard from somebody in the maintenance department that installing trap doors in the Unit Three yard enclosures could undermine the enclosures' integrity. Further supporting the jury's decision, Quiros himself testified that he had decided against installing the trap doors because AS Phase I prisoners were supposed to be housed in Unit Three only briefly, not because their installation would cause structural problems with the enclosures. Finally, there was conflicting testimony about whether Northern had the ability to move Edwards out of overflow housing in Unit Three and into Unit One housing, where he would have had the opportunity to exercise unrestrained in the individual enclosures. The jury was thus entitled to credit Edwards's version of events, in which he requested a transfer to Unit One but was arbitrarily rebuffed.

Regardless of whether we would have weighed the evidence as the jury did, we respectfully find that the district court erred in setting aside the jury's verdict on a Rule 50 motion.

## II.      Quiros Is Not Entitled to Qualified Immunity

Quiros once again claims he is entitled to qualified immunity, as he did in seeking summary judgment. But we rejected essentially the same argument at an earlier stage of this litigation,[25] and we have no new reason to grant qualified immunity to Quiros now. The disputed issues of fact that remained after our prior decision have now been resolved against him by the jury. The jury reasonably determined, upon sufficient evidence, that Quiros knowingly violated Edwards's clearly established right to meaningful exercise under the circumstances and lacked a sufficient justification for doing so. We will not disturb the jury's finding that Quiros was not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, we **VACATE** the district court's entry of judgment as a matter of law in favor of Quiros and **REMAND** for further proceedings.

---

[25] *Edwards*, 613 F. App'x at 47.