24-100-pr
Baltas v. Jones

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of December, two thousand twenty-five.

PRESENT:  AMALYA L. KEARSE,
          DENNIS JACOBS,
          RAYMOND J. LOHIER, JR.,
                *Circuit Judges*.

------------------------------------------------------------------

JOE BALTAS,

        *Plaintiff-Appellant*,

        v.                                          No. 24-100-pr

KIM JONES, In her individual capacity, MICHAEL CALDERON, In his individual capacity, DAVID MAIGA, In his individual capacity, MONICA RINALDI, In her individual capacity,

        *Defendants-Appellees*.

------------------------------------------------------------------

FOR PLAINTIFF-APPELLANT: JOSHUA MATZ, Hecker Fink LLP, Washington, DC (Zachary J. Piaker, Hecker Fink LLP, New York, NY, *on the brief*)

FOR DEFENDANTS-APPELLEES: EVAN O'ROARK, Assistant Solicitor General, *for* William Tong, Attorney General of the State of Connecticut, Hartford, CT

Appeal from a judgment of the United States District Court for the District of Connecticut (Michael P. Shea, *Judge*).

Plaintiff Joe Baltas appeals from the district court's judgment granting the motion of Defendants Kim Jones, Michael Calderon, David Maiga, and Monica Rinaldi for summary judgment on Baltas's 42 U.S.C. § 1983 claims. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, as well as with the opinions in this case that are filed simultaneously herewith. The majority opinion rejects as unexhausted Baltas's due process claim premised on predetermination of his Chronic Discipline ("CD") status hearing.[1] We now address the remainder of his

---

[1] Judge Lohier dissents in part in a separate opinion as to whether Baltas's predetermination claim was exhausted.

arguments and conclude that, as to them, the district court properly granted summary judgment in favor of Defendants.

Inadequate Notice. Baltas, at all relevant times a prisoner at the Garner Correctional Institution, contends that all Defendants—Garner officials—denied him due process when they placed him on CD, a restrictive housing status, without providing him adequate notice of his April 11, 2018 placement hearing. Baltas was given approximately 20 hours' notice of his hearing. The notice stated, correctly, that Baltas had "five (5) class A disciplinary offenses within 180 days." A-190.[2]

The level of notice to which Baltas was entitled depends on whether the CD placement hearing was a disciplinary hearing or an administrative determination. *See Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001). Disciplinary proceedings impose punishment "for a specific . . . violation" or "for specific . . . misbehavior." *Wilkinson v. Austin*, 545 U.S. 209, 228 (2005). Administrative determinations instead involve "predictions of future behavior," such as "a decision that an inmate or group of inmates represents a threat to the

---

[2] Citations to "A-" refer to the Joint Appendix.

institution's security."  *Hewitt v. Helms*, 459 U.S. 460, 474 (1983) (quotation marks omitted).

Disciplinary hearings require "written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence."  *Benjamin*, 264 F.3d at 190 (citing *Wolff v. McDonnell*, 418 U.S. 539, 561-70 (1974)).  Notice must be provided "no less than 24 hours" before a disciplinary hearing.  *Wolff*, 418 U.S. at 564.  In contrast, an administrative determination requires only that the inmate "receive some notice of the charges against him and an opportunity to present his views."  *Benjamin*, 264 F.3d at 190 (quoting *Hewitt*, 459 U.S. at 476).

The question of whether a CD placement hearing is disciplinary or administrative is arguably open.  However, because Baltas "has sued [state officials] under 42 U.S.C. § 1983 for actions taken in the course of their official duties, his lawsuit must overcome the qualified immunity that shields executive officials from such liability," including from procedural due process claims.  *Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019).  Qualified immunity "shields federal and state officials from money damages unless [the] plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and

4

(2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (citation omitted).

We have discretion to choose whether to proceed directly to the second prong to "avoid the '[u]nnecessary litigation of constitutional issues'" at step one. *Id.* at 140 (quoting *Pearson v. Callahan*, 555 U.S. 223, 237 (2009)). In some cases, answering the constitutional question before granting qualified immunity is appropriate to avoid "frustrat[ing] the development of constitutional precedent and the promotion of law-abiding behavior." *Camreta v. Greene*, 563 U.S. 692, 706 (2011) (quotation marks omitted). But "courts should think hard, and then think hard again, before turning small cases into large ones." *Id.* at 707.

Here, we proceed directly to the second prong. Because it was not clearly established in 2018 that a CD placement hearing requires *Wolff* procedures, Baltas cannot prevail on this due process claim unless he received less than what *Hewitt* demands for administrative determinations.

Baltas contends that the notice he received was insufficient even under the *Hewitt* standard because the notice did not specify the charges. He relies on *Taylor v. Rodriguez*, which found insufficient notice under *Hewitt* when a prison informed an inmate that he might be segregated for presumed gang

5

membership, but provided the inmate no "[s]pecific facts underlying allegations of current member[ship]." 238 F.3d 188, 193 (2d Cir. 2001).

The analogy is unavailing. Baltas's notice stated that he was being considered for CD because he had accrued "five (5) class A disciplinary offenses within 180 days." A-190. Baltas does not dispute that he had, indeed, accrued those offenses. The notice adequately informed him that he was being considered for CD based on his disciplinary record. Moreover, Baltas attests that he joined issue with these allegations: at his hearing, he "explained [that] he should not be placed on CD as he did not engage in misconduct and the reports were results of fraudulent reporting and harassment." A-25.

The district court did not err in granting summary judgment on Baltas's inadequate notice claim.

Failure to Reconsider CD Status. Baltas argues that Defendant Maiga—a senior prison official—violated his right to due process because his CD status was never reconsidered between its onset on April 20, 2018 and Baltas's departure from Garner on June 6, 2018. Restrictive housing "may not be used as a pretext for indefinite confinement of an inmate"; prisons "must engage in some sort of periodic review of the confinement." *Hewitt*, 459 U.S. at 477 n.9. This

standard was met where administrative confinement was reconsidered some four weeks after it started. *See id.* In contrast, the standard was not met when a prisoner was kept in administrative segregation, without "meaningful" review of his status, for thirteen years. *See Proctor v. LeClaire*, 846 F.3d 597, 610-14 (2d Cir. 2017). Under these precedents, it was not clearly established that senior prison officials violate due process by failing to confirm that their subordinates have conducted a meaningful review of CD status within a 47-day period. *See Dettelis v. Sharbaugh*, 919 F.3d 161, 163-64 (2d Cir. 2019) (noting that "[w]e may affirm on any ground that finds support in the record," including qualified immunity).

Summary judgment was properly granted as to Baltas's claim based on failure to reconsider his CD placement.

Free Exercise Claim. Baltas argues that Defendant Jones (a Garner Deputy Warden) violated Baltas's First Amendment right to free exercise of his religion by forbidding him from engaging in the Native American "smudging" ritual while in Garner's restricted housing unit ("RHU"). Though it is a closer call, this claim also fails for want of clearly established law.

We "judge prisoners' free exercise claims under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental

7

constitutional rights."  *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019) (citation

and quotation marks omitted).  We consider four factors:

> 1) whether there is a rational relationship between the [restriction]
> and the legitimate government interests asserted; 2) whether the
> inmates have alternative means to exercise the right; 3) the impact that
> accommodation of the right will have on the prison system; and 4)
> whether ready alternatives exist which accommodate the right and
> satisfy the governmental interest.

*Salahuddin v. Coughlin*, 993 F.2d 306, 308-09 (2d Cir. 1993) (citation

omitted); *see Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

Under these precedents, it was not clearly established that prison officials

would be "unreasonable" if they prevented prisoners who had "been deemed to

present various safety and security concerns" from having "access to a lighter" in

a religious ceremony.  A-200.  Baltas cites no cases involving similarly risky

practices.  Summary judgment was properly granted as to this claim.

Eighth Amendment Claims.  Baltas argues that Defendants Maiga, Rinaldi,

and Jones subjected Baltas to cruel and unusual punishment in the RHU because

Baltas was (1) forced to exercise in restraints; and (2) denied access to toiletries

while living in an unsanitary cell.  To prevail on an Eighth Amendment

conditions-of-confinement claim against prison officials, Baltas must prove that

"objectively, the deprivation [he] suffered was sufficiently serious that he was

8

denied the minimal civilized measure of life's necessities, such as being denied a meaningful opportunity for physical exercise." *Edwards v. Quiros*, 986 F.3d 187, 192 (2d Cir. 2021) (citation and quotation marks omitted). Baltas must also prove that "subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Id.* (citation and quotation marks omitted). "Deliberate indifference is more than negligence—it requires a showing that the prison official knew of, and disregarded, an excessive risk to inmate health or safety from the challenged condition of confinement." *Id.* (alterations adopted) (citation and quotation marks omitted). Liability attaches only if a defendant "violated the Eighth Amendment by [his or her] own conduct, not by reason of [his or her] supervision of others who committed the violation." *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020).

*Exercise*. Prisoners are entitled to a meaningful opportunity to exercise, subject to appropriate safety considerations, and forcing prisoners to exercise in restraints can thwart that entitlement. *See Edwards*, 986 F.3d at 191, 195. However, the only defendants who plausibly would have known about the exercise issue were Jones and Rinaldi, to whom Baltas complained about it, and both Jones and Rinaldi attested that they would have forwarded any such

9

complaint to subordinates. *See* A-156; A-167. Defendants are entitled to qualified immunity: reasonable officials at their level of seniority would not have known that they were themselves violating the Eighth Amendment by forwarding complaints to subordinates and doing nothing further.[3]

*Sanitation*. Baltas alleges that he was not permitted to keep hygiene products in his cell while confined in the RHU and could access them only "three times per week during [his] shower." Appellant's Br. at 16. He was never permitted to clip his nails or shave. And staff failed to pick up trash or food trays, "forcing Baltas 'to live in filth daily, with the bacteria, and odor of decaying food.'" *Id.* These claims fail for the same reason as the exercise claims: all Defendants are entitled to qualified immunity because, to the extent that they knew of the conditions, they passed along complaints to their subordinates.

Fourth Amendment Claim. Baltas contends that Jones violated his Fourth Amendment rights because Baltas was strip-searched whenever he left his RHU

---

[3] In a departure from the district court's reasoning, the defendants do not frame their defense to this Eighth Amendment claim in terms of qualified immunity. Nevertheless, "we still have the district court's reasoning on the issue that we may rely on" and may "affirm on any ground supported by the record." *Conte v. Emmons*, 895 F.3d 168, 176-77 (2d Cir. 2018) (citation and quotation marks omitted).

cell. *See* A-384. He attests that "Jones [was] personally aware of this" because she "ha[d] . . . been in the unit during these strip[s] and person[a]lly observed them," and Baltas "complained about them" to Jones "constantly, in person." *Id.*

"[I]nmates retain a limited right to bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (per curiam). There are two Fourth Amendment tests for prisoner strip searches. "[I]f the inmate's Fourth Amendment claim challenges an isolated search, courts typically apply the standard set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979)." *Id.* at 58. If, instead, the challenge is to a "policy" of conducting strip searches, "courts typically analyze the claim under *Turner v. Safley*" and uphold it "if it is reasonably related to legitimate penological interests." *Id.* at 57-58 (quoting *Turner*, 482 U.S. at 89). Because Baltas does not identify any particular strip search with specificity, and instead objects to the blanket policy of strip-searching him whenever he left his cell, *Turner* is the relevant framework.

Jones argues that she is not liable on the Fourth Amendment claim because she had no personal involvement in promulgating or enforcing a policy of strip-searching Baltas whenever he left his cell. *Turkmen v. Hasty* held that officers "were personally involved in creating and executing a strip-search policy that

11

was not reasonably related to legitimate penological interests" when they "approved and implemented it" and were aware it was carried out because of a search log. 789 F.3d 218, 260-61 (2d Cir. 2015). However, *Turkmen* expressly did not "premise . . . personal involvement entirely on [the] [d]efendants' alleged review of the visual search log." *Id.* at 261 n.43.

Baltas points to only two indications of Jones's personal involvement in the strip-search policy: that she saw some of the strip searches, and that Baltas complained to her that he was being strip-searched. Baltas's particular allegations of awareness and failure to act are insufficient to show that Jones was personally involved in the strip-search policy that he asserts violates his rights under the Fourth Amendment. Rather, it is analogous to the holding *Turkmen* disavowed: that mere knowledge of strip searches suffices for personal involvement in a Fourth Amendment violation. *See id.* at 261. Summary judgment was therefore properly granted on the Fourth Amendment claim.

We have considered Baltas's remaining arguments and conclude that they are without merit.  For the foregoing reasons, and those stated by the majority opinion filed concurrently herewith, the District Court's judgment is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13